605 So.2d 772 (1992)
Ronnie ESTES
v.
STATE of Mississippi.
No. 89-KA-0387.
Supreme Court of Mississippi.
August 5, 1992.
Jim Waide, Jimmy D. Shelton, Tupelo, for appellant.
Michael C. Moore, Atty. Gen., Patricia W. Sproat, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PITTMAN and BANKS, JJ.
HAWKINS, Presiding Justice, for the Court:
Ronnie Estes appeals from his conviction in the circuit court of Lee County of causing serious bodily injury while driving a motor vehicle under the influence of intoxicating liquor under the provisions of Miss. Code Ann. § 63-11-30 (Supp. 1988) and sentence to five years imprisonment. We have reviewed his assignments of error, and finding no ground for reversal, we affirm.

*773 FACTS
Bethany Road in Lee County west of Baldwyn runs in an East-West direction. Around 4:00 p.m. on Friday, August 5, 1988, a hot, dry day, Lee Outlaw, a 21-year-old man in physical training, was riding his bicycle East along a flat, straight stretch of the road. He was on the right side of the asphalt surface near the white line painted on the pavement edge.
At that point in time and place, two cars headed West were meeting Outlaw, the lead car being driven by Brenda Agnew, followed close behind by a blue car. Behind Outlaw was a red Ford automobile being driven by Estes. According to Agnew, she passed the bicycle and when she looked in her rear view mirror she saw the red Ford turn into the left lane, or west-bound lane, of traffic and then swerve back into the eastbound lane and hit the bicycle. She saw Outlaw go up into the air and come back down on the car.
Estes drove his car another 250 yards and stopped. Curtis Roberts was at a shop nearby, and hearing the noise, walked to where Estes was stopped. He saw Estes remove cans of beer from a cooler in his car and empty them. He told Estes he should back his car back to the scene or he would be charged with leaving the scene of the accident. Roberts could smell "sour beer" coming from the "car and him," and he detected slurring in Estes' speech. In Roberts' opinion Estes was intoxicated.
Sylvester Williams, a local policeman, arrived on the scene in a few minutes, detected alcohol on Estes' breath and slurring in his speech, and arrested him. Estes was taken to the police department in Baldwyn where Lovice McGaha, a dispatcher, administered a breath test on an intoxilyzer machine, which recorded .19 percent (.19%) alcohol in his blood.
Outlaw received severe injuries: a severely broken leg; many cuts and abrasions on his face, neck, chest, arms, upper shoulders, hips and buttocks; and deep lacerations approximately ten inches in length which "gouged out hunks of skin" on the backs of the shoulders. Dr. Janice Burns, the plastic surgeon who treated Outlaw, estimated that Outlaw received "maybe a thousand stitches." She and Dr. Clyde Phillips, who treated Outlaw's leg, testified that Outlaw's injuries would likely leave much permanent scarring.
On November 7, 1988, the grand jury of Lee County, pursuant to Miss. Code Ann. § 97-3-7(2) (Supp. 1988), indicted Estes for feloniously "... while having .10% or more by weight volume of alcohol in his blood, commit[ting] an aggravated assault upon Lee Outlaw, a human being, by causing serious bodily injury to the said Lee Outlaw, purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." Estes was tried March 13, 1989.
Estes was found guilty of negligently injuring Outlaw while intoxicated under the provisions of Miss. Code Ann. § 63-11-30(1), (4) and sentenced to serve five years imprisonment. He has appealed, and we will make further reference to the record in addressing his assignments of error.

LAW

I. CONVICTED UNDER NEGLIGENT INJURY WHILE INTOXICATED STATUTE, YET INDICTED UNDER AGGRAVATED ASSAULT STATUTE.
Miss. Code Ann. § 97-3-7 in pertinent part states:
§ 97-3-7. Simple assault; aggravated assault.
.....
(2) A person is guilty of aggravated assault if he...
(b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; and, upon conviction, he shall be punished by imprisonment in the county jail for not more than one (1) year or in the penitentiary for not more than twenty (20) years.
Miss. Code Ann. § 63-11-30(1), (4) in effect August 5, 1988, provided in pertinent part:

*774 § 63-11-30. Penalties for operation of vehicle while under influence of intoxicating liquor or other substance that impairs ability to operate vehicle; where violation causes injury or death to another person.
(1) It is unlawful for any person to drive or otherwise operate a vehicle within this state who (a) is under the influence of intoxicating liquor; (b) is under the influence of any other substance which has impaired such person's ability to operate a motor vehicle; or (c) has ten one-hundredths percent (.10%) or more by weight volume of alcohol in the person's blood based upon milligrams of alcohol per one hundred (100) cubic centimeters of blood as shown by a chemical analysis of such person's breath, blood or urine administered as authorized by this chapter.
.....
(4) Every person who operates any motor vehicle in violation of the provisions of subsection (1) of this section and who in a negligent manner causes the death of another or mutilates, disfigures, permanently disables or destroys the tongue, eye, lip, nose, or any other limb or member of another shall, upon conviction, be guilty of a felony and shall be committed to the custody of the State Department of Corrections for a period of time not to exceed ten (10) years.
When the State and Estes had both rested at trial, defense counsel moved for a directed verdict of not guilty of aggravated assault under Miss. Code Ann. § 97-3-7, and also added to his motion:
Also, we would move that the lesser charge that is being also tried, evidently, here today which is set forth in Section 66-11-30 of the Mississippi Code, which states that every person that operates a motor vehicle in violation of provision of Subsection One of this Section, which causes the death of another, mutilates, disfigures, permanently disables or destroys the tongue, eye, lip, nose or any other limb or member of another; and we submit to the Court this has not been proven and we would request that this lesser charge also be dismissed.
(Vol. III, pp. 300-301)
The motion was overruled.
The State's Instruction S-1 embodied the elements of aggravated assault, and Instruction S-2 embodied the elements of negligent injury of another while intoxicated.[1]
In chambers when the circuit judge was considering the instructions, he asked defense counsel to respond to requested Instruction S-2:
MR. SHELTON:
Well, Your Honor, I think we need such an instruction. It does not include all the elements of the charge under 63-11-30, which includes all these other things that I just had in the motion for a directed verdict, mutilate, disfigures, and so forth.
The circuit judge overruled this objection.
It is thus apparent from the record that counsel had no objection at any time during trial to the State's proceeding under both statutes, only challenging the sufficiency *775 of the evidence under both statutes. Neither did Estes in his motion for a new trial filed March 24, 1989, assign as ground for a new trial that the court had no authority to try him under both statutes.
Although Estes was indicted under the aggravated assault statute, he was apprised that an ingredient of the Miss. Code Ann. § 63-11-30 crime was committed when he had "... 10% or more by weight volume of alcohol in his blood." He had no objection during trial, and apparently was perfectly willing for the court to submit the lesser offense to the jury along with aggravated assault. Unless the court had no authority under the Constitution or by law to submit the offense of negligent injury while intoxicated to the jury, Estes has waived the objection. See Sanders v. State, 479 So.2d 1097, 1105-08 (Miss. 1985) (defense objected to second instruction embodying another offense).
For the first time on appeal, Estes argues that the circuit court under Article III, § 27 of the Constitution had no authority to submit to the jury the issue of whether he was guilty under Miss. Code Ann. § 63-11-30(1), (4). In Jefferson v. State, 556 So.2d 1016 (Miss. 1989), Jefferson was indicted for burglary of two automobiles. Upon Jefferson's request he was permitted to plead guilty to two charges of larceny. Several years later, when he was indicted for another felony, and these convictions were used to enhance punishment under Miss. Code Ann. § 99-19-81 (Supp. 1990), he objected, claiming the court had no authority to accept his plea of guilty, sans indictment, to larceny. We held that although larceny was not a lesser included offense of burglary, he could waive this deficiency, and that he did so when he requested to plead guilty to larceny. Also, Gangl v. State, 539 So.2d 132, 136 (Miss. 1989); Griffin v. State, 533 So.2d 444, 448 n. 2 (Miss. 1988).
Although Estes did not in this case request the instruction, we see no significant distinction here than in Jefferson. When it was to Estes' advantage to have a jury consider conviction of a crime with a lesser punishment than that for which he was indicted, he was perfectly willing for the jury to do so. Only after conviction and in his appeal brief does he first offer any objection. The objection was effectively waived.
Estes also claims a violation of Article III, § 26, of the Mississippi Constitution for failure to inform him of the "nature and cause of the accusation," which is without merit. The indictment charged him with recklessly injuring another while having over .10% alcohol in his blood. He was never misled or left in the dark, and knew precisely the crimes for which he was being tried and the State's contention as to the facts. Jefferson, 556 So.2d at 1019; Gangl, 539 So.2d at 136; Griffin, 533 So.2d at 448. Moreover, in making no objection either at trial or in his motion for a new trial, he waived any such objection. Crenshaw v. State, 520 So.2d 131, 134 (Miss. 1988); Singleton v. State, 518 So.2d 653, 655 (Miss. 1988); Howard v. State, 507 So.2d 58, 63 (Miss. 1987); Temple v. State, 498 So.2d 379, 381 (Miss. 1986); Sand v. State, 467 So.2d 907, 910 (Miss. 1985).

II. INTOXILYZER TEST
Estes complains that the result of the intoxilyzer test was incompetent evidence because no expert testified as to its reliability. He argues that McGaha was not authorized by law to administer the test, and the reliability of the test was not demonstrated to the court.
When McGaha was called to testify as a State's witness, Estes objected, the circuit judge excused the jury, and inquired of defense counsel the basis of the objection. Counsel responded that the test result should not be admitted because Estes had not been convicted of driving while intoxicated, and that he was not advised of his right to refuse the test. The circuit judge overruled this objection.
McGaha had attended a one-day school for intoxilyzer test operators conducted by the Mississippi Highway Patrol and had been issued a permit. At trial she testified that she had administered the test "on hundreds." She testified that the machine had been calibrated by someone from the Highway *776 Safety Patrol named Holloway on August 1. There is a checklist provided for an operator of the machine. McGaha testified that she followed the checklist. She told Estes he had a right to refuse the test. She said that Williams, the city policeman, went to the scene of the accident at 4:21 p.m. She ran the test on him at 4:44 p.m. Estes blew into a mouthpiece attached to the machine until a bell rang. The printout card showed .19%. From observing his appearance, McGaha testified that Estes was intoxicated.
Miss. Code Ann. § 63-11-19 (Supp. 1991) creates an assumption of validity of a breath test if performed according to the methods approved by the State Crime Lab, and performed by an individual possessing a valid permit. The statute also requires the State Crime Lab to test the machine periodically, at least quarterly.[2]
There was substantial compliance with the statute in this case, and no error was committed by the circuit judge in admitting the result of the test into evidence. Williams v. State, 434 So.2d 1340 (Miss. 1983).
Three disinterested witnesses testified that Estes was visibly intoxicated. He was observed removing cans of beer from a cooler in his car and emptying them. Instruction S-2 authorized a conviction if Estes "was under the influence of intoxicating liquor or had at the time ten one-hundredths percent (.10%) or more by weight volume of alcohol in his blood."
Estes' two remaining assignments of error are a double jeopardy claim and that the injuries Outlaw received did not come under Miss. Code Ann. § 63-11-30(4). Neither of these assignments merits discussion.
Finding no reversible error, the judgment of the circuit court is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., dissents with separate written opinion.
McRAE, Justice, dissenting:
I cannot emphasize strongly enough my abhorrence for the all too common practice of driving under the influence of alcohol. However, I am constrained by our constitution to afford those charged under Miss. Code Ann. § 63-11-30 the same rights and protection given those charged with other criminal offenses. As the statute was initially adopted, levying only a fine against those convicted of drunk driving, the notion of implied consent was not a problem. However, now that the offense has been elevated to a felony, implied consent does not pass constitutional muster. Accordingly, I dissent from the majority's finding that there was no ground for the reversal of Estes' conviction.
*777 Estes was not advised of his right to refuse the intoxilyzer test. Therefore, the results of the test should not have been admissible at trial. Whether a person is charged with vehicular manslaughter or with causing serious bodily injury while driving under the influence of intoxicating liquor, the State, by administering the intoxilyzer test, is seeking a confession from him. An individual charged with any other criminal offense must be apprised that he has a right to remain silent, that anything he says can and will be used against him in court, and that he has the right to have counsel present at all times during interrogation. Miranda v. Arizona, 384 U.S. 436, 439, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He may, however, voluntarily waive those rights, but only if such waiver is made knowingly and intelligently. Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378, (1981). Likewise, an individual charged under § 63-11-30 should be entitled to the same rights when submitting to an intoxilyzer test, waiving them only after giving a knowing and intelligent waiver. However, this presents us with a Catch-22 situation. If an individual is so inebriated as to fail the intoxilyzer test, how can he be said to have given a knowing and intelligent waiver of his rights? The results of an intoxilyzer test are tantamount to a confession. Just as a confession given without a knowing and intelligent waiver of rights is not admissible, so the results of the test, given without a knowing and intelligent waiver, should not be admitted.
I find further error in the circuit court's granting of Instruction S-2, which amounts to a peremptory instruction for the State. In particular, paragraph 3 of the instruction, which states that Estes "operated a motor vehicle in a negligent manner" fails to provide any definition of the term "negligent," or otherwise instruct the jury on the elements of negligence. To find the defendant guilty, the jury was charged with finding that Estes was intoxicated, that he was negligent and that he caused the injuries sustained by Outlaw. Because the State simply used the general term "negligent," the jury was not properly instructed. As we have stated in civil cases, failure to articulate the manner in which the defendant was negligent is reversible error. Rucker v. Hopkins, 499 So.2d 766 (Miss. 1986). Likewise, where no other instruction was given to the jury defining the elements of negligence, the failure to do so in Instruction S-2 constitutes reversible error.
Because Estes was prejudiced by the admission of the intoxilyzer test and the granting of Instruction S-2, I respectfully dissent from the majority's affirmation of his conviction.
NOTES
[1] State's Instruction S-2 reads in full:

In the event that you fail to find the defendant, RONNIE ESTES, guilty of Aggravated Assault, then you may consider the lesser included crime of Mutilation Of A Human Being While Under the Influence Of Intoxicating Liquor. If you find from the evidence in this cause beyond a reasonable doubt that RONNIE ESTES did:
1. Drive or operate a motor vehicle within the State of Mississippi, and;
2. At that time, RONNIE ESTES was under the influence of intoxicating liquor (or) had at the time ten one-hundredths percent (.10%) or more by weight volume of alcohol in his blood; and
3. At that time, operated a motor vehicle in a negligent manner and did thereby cause the mutilation, disfigurement, or permanent disablement of Lee Outlaw, a human being; then you shall find the defendant, RONNIE ESTES, guilty of Mutilation Of A Human Being while Under the Influence of Intoxicating Liquor.
If the State has failed to prove one or more of these elements, then you shall find the defendant not guilty [of] Mutilation Of A Human Being While Under the Influence Of Intoxicating Liquor.
[2] Miss. Code Ann. § 63-11-19 in full reads:

§ 63-11-19. Tests to be performed according to approved methods; certification of administrators.
A chemical analysis of the person's breath, blood or urine, to be considered valid under the provisions of this section, shall have been performed according to methods approved by the State Crime Laboratory created pursuant to Section 45-1-17 and the Commissioner of Public Safety and performed by an individual possessing a valid permit issued by the State Crime Laboratory for making such analysis. The State Crime Laboratory and the Commissioner of Public Safety are authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the State Crime Laboratory. The State Crime Laboratory shall not approve the permit required herein for any law enforcement officer other than a member of the State Highway Patrol, a sheriff or his deputies, a city policeman, officer of a state-supported institution of higher learning campus police force, national park ranger, national park ranger technician or a military policeman stationed at a United States military base located within this state other than a military policeman of the Army or Air National Guard or of Reserve Units of the Army, Air Force, Navy or Marine Corps.
The State Crime Laboratory shall make periodic, but not less frequently than quarterly, tests of the methods, machines or devices used in making chemical analysis of a person's breath as shall be necessary to insure the accuracy thereof, and shall issue their certificate to verify the accuracy of the same.