KITCHENS, Justice,
for the Court:
¶ 1. Alen Rogers, Jr., was convicted by a jury of two counts of child sex abuse and was sentenced to a total of thirty-three years’ imprisonment. In Count One, Rogers was convicted of sexual battery against eight-year-old Benjamin Hicks. In Count Two, Rogers was convicted of fondling William Hicks, Benjamin’s eleven-year-old brother.[1] Rogers has appealed, arguing that the trial court erred by overruling his hearsay objection to statements made by Benjamin to a forensic psychologist. He also argues that the State failed to prove that Count Two occurred in Scott County, as alleged in the indictment. Finding error on both counts, we reverse Rogers’s convictions and sentences and remand the case for a new trial.
Facts
¶ 2. On August 15, 2009, Benjamin and William were eating dinner with their mother, Christy Pope, and their stepfather, Michael Pope, when, according to Christy, William “made a comment about Benjamin.” Christy did not testify about the details of the conversation, other than “it didn’t sound good,” and that the comment was “sexual in nature.” Christy testified that, after she and Michael had questioned the boys further, they took them to the Scott County Sheriffs Department, where the family was interviewed by Sergeant Scott Lingle.
¶ 3. Ater interviewing the family, Lingle referred the ease to Investigator Willie Anderson, who conducted his own interview with the family on Monday, August 17, 2009. On Wednesday, August 19, 2009, the investigating officers referred the lam- *625 ily to the Wesley House, a Child Advocacy Center (CAC) in Meridian, Mississippi, where the children were interviewed, separately, by psychologist Olga Kahle.[2]
¶ 4. Kahle testified at trial about the substance of the boys’ interviews. During Benjamin’s interview, Benjamin told Kahle that Rogers had both anal and oral sex with him at an apartment in Sebastopol, Mississippi.[3] According to Kahle, Benjamin said that Rogers “put his mouth on Benjamin’s penis,” and that Rogers “put his wiener inside Benjamin’s butt.” Benjamin told Kahle that this abuse occurred in the bathroom.
¶ 5. Benjamin also told Kahle about an incident in Rogers’s bedroom involving Rogers and a man named James. Before Kahle could relate the details of this incident, Rogers’s trial attorney made an objection, and the prosecutor told Kahle that she could “dispense with” the remainder of Benjamin’s interview. Through Christy’s trial testimony, the jury had learned that James was Rogers’s brother, and that James also was charged with some unspecified sex crime involving the boys.
¶ 6. During William’s interview, William told Kahle that he had witnessed oral sex between Rogers and Benjamin through a hole in the apartment’s bathroom door. William also told Kahle that he had witnessed this abuse once, and that it had happened two years before the interview. William did not tell Kahle that he, William, had been sexually abused.
¶ 7. On August 25, 2009, six days after Kahle’s interview with the boys, Rogers gave two statements to Lingle and Anderson at the Scott County Sheriffs Department. The first statement was written by Rogers in very rudimentary handwriting and contained numerous spelling and grammatical errors. Anderson’s reading of the statement at trial was transcribed as follows:
I, Allen Rogers, Jr., sexually abused Benjamin and William Hicks once. I was drinking. Had a lot too much to start playing with the boys and slipped their pants down and put my penis around their hole. I never went and got Benjamin to put my penis in his mouth. Not William.
A copy of the statement, as handwritten by Rogers, with the alleged victims’ names redacted, is attached to this opinion as Appendix A. Because this first statement was “hard to understand,” Lingle typed a second statement for Rogers’s signature about an hour after Rogers had completed and signed the first. This second statement contained significantly more detail, including an admission that Rogers had engaged in oral sex with Benjamin:
I have asked Sgt. Lingle to write this statement for me. I have not been forced, promised, coerced anything. I am giving this statement on my own free will.
We were living in the apartment above the Napa store in Sebastopol. The people living in the apartment at the time were, Me, Allen Rogers, Jr., Amanda Rogers, Adam Rogers, Christy Hicks, Michael Pope, Benjamin Hicks, and William Hicks. Michael was gone but everyone else was there. This happened in the room that Benjamin and William *626 played in. It was at night and I had been drinking beer and was drunk. I was playing around with Benjamin. I was picking him up by his legs and his pants came down. I was playing around and put my penis toward his hole, it didn’t go in. I put my penis in Benjamin’s mouth. William was asleep in the same room but he woke up. Benjamin went and layed down with his mother and I started playing around with William. He was wearing underwear. I told him what I was doing and he said he wanted to try it. I put my penis near his hole but did not go in. I rubbed my penis on his crack. William said stop and I did. William went to his mother’s room. I realized what I was doing. I sat in the room and cried. I went to sleep in that room and my wife woke me up later to go to bed. That night was the only time I ever done anything like this. After that I would not let myself be left alone with any kids.
Both statements were received in evidence through Anderson, over defense counsel’s objection.[4]
¶ 8. On April 1, 2010, Rogers was indicted for two counts of child sex abuse. Count One charged Rogers with sexual battery against Benjamin, specifically, “causing [Benjamin] to engage in fellatio on [the defendant].” Miss.Code Ann. § 97-3-95(l)(d) (Rev.2006).[5] Count Two charged Rogers with fondling William. Miss.Code Ann. § 97-5-23(1) (Rev.2006). The indictment alleged that both crimes occurred in July 2009, in Scott County, Mississippi.
¶ 9. Rogers was tried by jury on June 9, 2010. In addition to Rogers’s two statements and Kahle’s testimony, the State’s main evidence included testimony from William, who was twelve years old at the time of trial. William testified that he had seen Rogers “sticking his private part in Benjamin’s butt,” but he repeatedly denied witnessing any oral sex. According to William, the abuse occurred in the bathroom of an apartment in Sebastopol, Mississippi. William testified that he could see Rogers and Benjamin in the bathroom because the bathroom door was slightly ajar. William also said that the incident occurred during daylight hours, but he could not recall on what date.
¶ 10. When asked whether he had ever been abused by the defendant, William testified that Rogers “stuck his private part in my butt” while the two were in a chicken house. According to William, the chicken house was in Lena, a town William believed to be in Scott County. William could not recall when this abuse had oc *627 curred. When asked why he did not tell Kahle about his abuse during the CAC interview, William responded that he was “nervous,” because Kahle’s interview “was the first time that I got asked questions like that.”
¶ 11. Rogers’s wife and his mother testified in his defense. Both women testified that the boys were not living in the Sebas-topol apartment during July 2009. This was consistent with Christy’s testimony that they had lived in the apartment from November 2008 until February 2009. Rogers’s mother and wife also testified that Rogers had received special education when he was in school and that he was semiliterate. According to his mother, Rogers was sexually abused when he was in preschool. She also testified that he was “easily open for suggestion,” and that “you tell him something or ask him something over and over, he will eventually just say whatever you want to hear so you will leave him alone.” Rogers elected not to testify in his defense.
¶ 12. The trial was completed in less than a day, and the jury found Rogers guilty on both counts: Count One for sexual battery of Benjamin and Count Two for fondling William. The trial judge sentenced Rogers to thirty years’ imprisonment on Count One and three years’ imprisonment on Count Two, with the sentences to run consecutively. Rogers appealed both convictions and challenges each on separate grounds.
Count One: Sexual Battery
¶ 13. Rogers argues that his conviction of Count One (sexual battery against Benjamin) must be reversed because the trial judge allowed Kahle, the psychologist, to testify about the substance of Benjamin’s interview without first determining whether Benjamin’s statements to Kahle were reliable. As an evidentiary matter, we review the trial judge’s ruling for an abuse of discretion and will reverse if the admission of evidence resulted in prejudice to the accused. Price v. State, 898 So.2d 641, 653 (Miss.2005) (citing White v. State, 742 So.2d 1126, 1134 (Miss. 1999)). Of course, “the trial court’s discretion must be exercised within the scope of the Mississippi Rules of Evidence.” Id. (quoting White, 742 So.2d at 1134).
¶ 14. Rogers relies on Rule 803(25) of the Mississippi Rules of Evidence.[6] Also known as the “tender years exception” to hearsay, Rule 803(25) provides:
A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted *628 only if there is corroborative evidence of the act.
The comment to Rule 803(25) gives a non-exhaustive list of twelve factors that the trial judge should consider when determining whether there are sufficient indicia of reliability. M.R.E. 803(25) cmt. (citing Smith v. State, 925 So.2d 825, 837 (Miss.2006); Hennington v. State, 702 So.2d 403, 415 (Miss.1997)). “The unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made.” Williams v. State, 35 So.3d 480, 489 (Miss.2010) (quoting Bell v. State, 797 So.2d 945, 948 (Miss.2001)). This Court has held, “[a] finding that there is a substantial indicia of reliability should be made on the record.” Young v. State, 679 So.2d 198, 203 (Miss.1996) (emphasis added) (quoting M.R.E. 803(25) cmt.).
¶ 15. Just after trial had begun, the trial judge halted testimony and held a competency hearing for William and Benjamin in chambers. The trial judge found that William was competent to testify, but that Benjamin was “shy,” “intimidated,” and did not seem to understand the proceedings. The judge ruled that Benjamin could not testify, reasoning:
[Benjamin’s] testimony is governed by the Rule 802, the hearsay rule, and the exception to the hearsay rule is the tender years doctrine exception, that would be Rule 25.... I am not convinced he understands this proceeding and can comply with the tender years exception so I am going to deny his testimony.... What that means is he is the only one who can testify to the charge.
The prosecutor then asked whether Benjamin’s mother could testify about “the fact that a report had been made.” The judge responded, “[w]ell, reading this exception, it provides the statement of a child may be admitted if it is corroborated by evidence of the act itself, but to answer your question, it depends on ... what develops.”
¶ 16. The trial resumed with the State’s direct examination of William, during which William repeatedly denied witnessing any oral sex between Rogers and Benjamin. The State then halted its examination of William, and, outside the jury’s presence, asked that the trial judge reconsider his previous ruling that Benjamin was incompetent to testify. According to the prosecutor, William’s trial testimony was inconsistent with his and his brother’s CAC interviews and with Rogers’s confession regarding Count One. Therefore, the prosecutor argued, Rogers’s confession as to Count One would be inadmissible without Benjamin’s testimony, and that the State would be unable to sustain its burden of proof.
¶ 17. Although the trial judge had determined that Benjamin was incompetent to testify, he allowed the State to call Benjamin as a witness before the jury. The State attempted to establish Benjamin’s competency; but when he became unresponsive, the prosecutor ceased his questioning and “yielded to the Court’s previous determination.” Benjamin never testified about the abuse or his interview at the CAC, but he did testify that he did not like Rogers “because of what happened.” [7]
¶ 18. After failing to elicit any testimony from the children that Rogers had caused Benjamin to engage in fellatio, as alleged in Count One, the State called Kahle to the witness stand. Until that point, there had been no indication on the *629 record about the substance of Kahle’s testimony. Kahle gave a brief summary of her qualifications and testified that Benjamin was referred to the Wesley House by the Scott County Sheriffs Department. After a brief summary of the procedure she had used to interview children, the following exchange occurred:
Prosecutor: Now, what specifically, what specific acts of abuse did Benjamin relate to you during the course of your interview?
Kahle: He disclosed that [Rogers], a grownup cousin, had — well, I can say it in general, in my words, that cousin had anal and oral sex with him, but, of course, he didn’t use those words. I can describe what he said in his own words.
Prosecutor: All right. In his words, what was said?
Defense Counsel: Your Honor. I object. Hearsay.
Court: Overruled.
Prosecutor: You can answer.
Kahle then testified about Benjamin’s statements to her, which included a statement that Rogers had “put his mouth on Benjamin’s penis.” The State then concluded its case by introducing Rogers’s confessions, which were received into evidence.
¶ 19. There is no question that Kahle’s testimony purported to recount a “statement made by a child of tender years describing any act of sexual contact performed with or on the child by another,” which should have been excluded absent a judicial finding that “the time, content, and circumstances [of the interview] provide[d] substantial indicia of reliability.” M.R.E. 803(25). On appeal, the State concedes that there was no finding of reliability and that there was no “hearing conducted outside the presence of the jury” as required under Rule 803(25). The State’s only argument is that the admission of Kahle’s testimony is “harmless at worst,” citing Rogers’s confession as overwhelming evidence of his guilt. See Brown v. State, 995 So.2d 698, 704 (Miss.2008) (noting that error may be harmless if there is “overwhelming evidence of guilt”) (quoting Thomas v. State, 711 So.2d 867, 872 (Miss. 1998)).
¶ 20. In this case, we cannot say “beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” Brown, 995 So.2d at 704 (quoting Thomas v. State, 711 So.2d at 872). As the prosecutor seemed to recognize at trial, an accused’s confession is not sufficient to support a felony conviction absent corroboration by independent proof of the corpus delicti Hodge v. State, 823 So.2d 1162, 1166 (Miss.2002) (citing Cotton v. State, 675 So.2d 308, 314 (Miss.1996); Bullock v. State, 447 So.2d 1284, 1286 (Miss.1984); Steward v. State, 32 So.2d 791, 791 (Miss.1947); Pope v. State, 158 Miss. 794, 131 So. 264, 265 (1930)). “The reason for the rule requiring evidence independent of the confession is to avoid convicting a person solely out of his own mouth of a crime that was never committed or was committed by someone else.” Rhone v. State, 254 So.2d 750, 753 (Miss. 1971).
¶ 21. Regarding Count One, the State was required to prove the indictment’s allegation that Rogers committed sexual battery by “causing [Benjamin] to engage in fellatio on [the defendant].” But, the only proof to corroborate Rogers’s confession that he had engaged in oral sex with Benjamin was Kahle’s hearsay testimony. In fact, there were five different versions of events: William’s trial testimony, Benjamin’s interview with Kahle, William’s interview with Kahle, and Rogers’s two confessions. In each account, Rogers was *630 said to have committed some type of sexual abuse on Benjamin, but the attendant details are highly inconsistent.[8] We do not agree with the State’s argument that the confession provided overwhelming evidence of guilt when there was no finding by the trial court, under Rule 803(25), that the corroborating hearsay evidence was reliable.
¶ 22. Hearsay generally is not admissible because it is considered unreliable and untrustworthy. Burchfield v. State, 892 So.2d 191, 198 (Miss.2004) (citing Hercules, Inc. v. Walters, 434 So.2d 723, 726-27 (Miss.1983); M.R.E. 802). When the declarant is a child of tender years, reliability concerns are magnified because “common sense suggests that their testimony be viewed with caution.” House v. State, 445 So.2d 815, 827 (Miss.1984), superseded on other grounds by M.R.E 702. Notably, the “tender years exception” to the general hearsay rule is the only exception that expressly requires a separate hearing to determine reliability. M.R.E. 803(25). In this case, no separate hearing was held, and there was no finding by the court that Benjamin’s statements to Kahle were reliable. Because Benjamin was unable to testify, the only witness who could testify about “the time, content, and circumstances of the statement,” was Kahle herself. The only testimony to corroborate Rogers’s second confession was hearsay from the eight-year-old boy, the reliability of which was never determined. Under such circumstances, we cannot conclude that the error was harmless.
Count Two: Fondling
¶ 23. Rogers challenges his conviction of Count Two (fondling William) by arguing that the State failed to prove venue beyond a reasonable doubt. Article 3, Section 26, of the Mississippi Constitution provides that an accused has the right to trial “by an impartial jury of the county where the offense was committed.” This Court has held consistently that “proof of venue is an essential part of criminal prosecution, and the State bears the burden of proving venue beyond a reasonable doubt.” Hill v. State, 797 So.2d 914, 916 (Miss. 2001) (citing Crum v. State, 216 Miss. 780, 787, 63 So.2d 242, 244 (1953); Hester v. State, 753 So.2d 463, 467 (Miss.Ct.App. 1999)). In addition, because “venue is jurisdictional” in criminal cases, the issue may be raised for the first time on appeal. Gillett v. State, 56 So.3d 469, 502 (Miss. 2010) (quoting Crum, 63 So.2d at 244-45). “While the ultimate burden of proving venue that rests upon the State is beyond a reasonable doubt, this is the standard of proof before the jury, not the trial judge.” Hill, 797 So.2d at 916 (citing State v. Fabian, 263 So.2d 773, 775 (Miss.1972)).
¶ 24. The indictment alleged that both crimes occurred in Scott County, Mississippi, and there was testimony at trial that the apartment was located in Scott County. However, according to William’s trial testimony, William was sexually abused in a chicken house, not in the Se-bastopol apartment. When asked where this chicken house was located, William responded that he did not know the address, but that he believed it was in Scott County “because we didn’t go out of Scott County.” On cross-examination, William testified that the chicken house was in Lena. He was also asked whether Lena was in Scott or Leake County, to which he responded, “I think it’s in Scott County ... I’m not sure.” After cross-examination, the trial judge examined William, and William reaffirmed that he was abused by *631 Rogers at a chicken house in Lena, not at the apartment in Sebastopol. Based on the record before us, it appears that William’s testimony was a surprise to both the prosecutor and the defense attorney.
¶ 25. At the close of the State’s presentation of the evidence, Rogers moved for a directed verdict on both counts. On Count Two, Rogers’s attorney argued that the State had failed to meet its burden of proof, because William’s trial testimony was not consistent with the indictment. According to his attorney, “William did describe some incident, but it happened after Katrina [ 9] at a chicken house, and it certainly did not happen in July of 2009.” The State countered that “where it happened and exactly when it happened is important for the purpose of a defense, but it’s not fatal from the State’s perspective if it sufficiently gives the Defendant notice of the fact of it happening.” The trial judge overruled the motion for a directed verdict, noting only that the testimony of children “could be suspect.”
¶ 26. Despite William’s stated belief that Lena was in Scott County, we notice that the municipality of Lena is, in fact, situated in Leake County.[10] On appeal, the State does not dispute that Lena is located in Leake County, Mississippi. Instead, the State argues that William’s testimony was sufficient to present the question of venue to the jury, as explained in Hill v. State, 797 So.2d at 916.
¶27. The State also cites Mississippi Code Section 99-11-3(1), which provides that:
The local jurisdiction of all offenses, unless otherwise provided by law, shall be in the county where committed. But, if on the trial the evidence makes it doubtful in which of several counties, including that in which the indictment or affidavit alleges the offense was committed, such doubt shall not avail to procure the acquittal of the defendant.
In response, Rogers asserts that Section 99-11-3(1) cannot relieve the State of its burden to prove venue, emphasizing the defendant’s constitutional right to be tried in the county where the crime occurred. Miss. Const. art. 3, § 26. Rogers argues that we should invalidate the statute as unconstitutional rather than applying it to affirm his conviction.
¶ 28. However, it is not necessary to invalidate Section 99-11-3(1) to reach a decision in the case, for the jury was never instructed that, to convict, it was required to find from the evidence, beyond a reasonable doubt, that the crime had occurred in Scott County, Mississippi. The relevant instruction read:
The Court instructs the Jury that ... if you believe from the evidence in this case beyond a reasonable doubt that at the time and place charged in Count Two of the indictment and testified about, the Defendant, Allen Lynn Rogers, Jr., did willfully, unlawfully and fe-loniously touch the person of William Hicks, a male child under the age of sixteen (16) years for the purpose of gratifying his lust and indulging his depraved licentious sexual desires, at a time when he, the said Allen Lynn Rogers, Jr., was a male person above the age of eighteen (18) years, then it is *632 your duty to find the Defendant guilty as charged in Count Two.
(Emphasis added.) The phrase “at the time and place charged in Count Two of the indictment and testified about,” did not apprise the jury that the crime must have occurred in Scott County, Mississippi. The indictment was not before the jury, and the “time and place testified about” was far from definite.
¶ 29. We note that the Mississippi Judicial College’s “general pattern instruction” for criminal offenses reads in relevant part, “[i]f you find from the evidence in this case beyond a reasonable doubt that: 1. [Defendant’s Name] on or about [date of offense] in [county of offense ]; ... then you shall find the defendant guilty as charged.” Miss. Model Jury Instructions: Criminal § 1:6 (2010) (emphasis added). This publication also contains a “checklist for drafting criminal instructions” which includes “date and venue” under the category “evidentiary and other matters.” Id. at § 1:5.
¶ 30. Although neither party raised an issue with the jury instructions, the omission is glaringly obvious in light of the State’s argument that venue was a question for the jury. In fact, that question was not presented to the jury. Failure to instruct the jury on the essential elements of the crime is plain error. Berry v. State, 728 So.2d 568, 571 (Miss.1999) (citing Hunter v. State, 684 So.2d 625, 636 (Miss.1996)). “Where the jury had incorrect or incomplete instructions regarding the law, our review task is nigh unto impossible and reversal is generally required.” Henderson v. State, 660 So.2d 220, 222 (Miss.1995) (quoting Neal v. State, 451 So.2d 743, 757 n. 9 (Miss.1984)). In this case, the jury was never told that it had to find from the evidence and beyond a reasonable doubt that the crime had occurred in Scott County, Mississippi. Given that venue is “essential” to a criminal prosecution, and that venue may be raised for the first time on appeal, Gillett, 56 So.3d at 502, we find that such an obvious omission is fatal and requires reversal.
Conclusion
¶ 31. The errors in this case require reversal of both convictions. In Count One, Kahle’s testimony about Benjamin’s statements to her were hearsay. Under Rule 803(25) of the Mississippi Rules of Evidence, this testimony was inadmissible in the absence of a separate hearing and a judicial finding that the hearsay statements were reliable. Because Kahle’s testimony was the only evidence corroborating Rogers’s second confession, we cannot say that this error was harmless. In Count Two, there was conflicting evidence as to whether the crime occurred in Scott or Leake County. Because the question of venue was not submitted to the jury, the conviction in Count Two must also be reversed. We reverse Rogers’s convictions and sentences, and we remand this case to the Circuit Court of Scott County for a new trial, consistent with this opinion.
¶ 32. REVERSED AND REMANDED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, CHANDLER, PIERCE AND KING, JJ., CONCUR.
*633 [[Image here]]

. Throughout this opinion, pseudonyms are used for the children and the children's parents.

. It is unclear whether Lingle or Anderson accompanied the family, but at least one of these officers witnessed the interviews from a separate monitoring room. The interviews were captured on video and audio recordings. These recordings were not presented to the jury, and they are not included in the record on appeal.

. Sebastopol is a municipality in Scott County, Mississippi. The Mississippi Official and Statistical Register 370 (2008-2012).

. At the trial judge's behest, a mid-trial suppression hearing was held outside the presence of the jury. During this hearing, both Anderson and Lingle testified that Rogers had been given a Miranda warning, and that he fully understood and waived those rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is unclear from the officers’ testimony how long Rogers had been in custody before he gave the two statements. Anderson testified that “when we picked him up, he was not in custody,” but there was no testimony about when Rogers was “picked up.” According to Anderson, Rogers was not "arrested” until after he had given his written confessions. However, when asked whether Rogers was free to leave during the interrogation, Lingle responded, "I can’t say. Captain Anderson was in charge of that.”
Rogers’s defense attorney did not call any witnesses during this hearing. At the conclusion of the hearing, he objected to admission of the first statement, arguing that Rogers "was not aware of his rights.” As for the second statement, which was given about an hour later during the same interrogation, Rogers's attorney argued that he should have been "re-Mirandized.”

. The jury instructions did not define the term fellatio.

. Rogers’s briefs do not cite the Confrontation Clauses of our state and federal constitutions. U.S. Const. amend. VI; Miss. Const. art. 3, § 26. However, his reply brief contains a quotation from this Court’s opinion in Griffith v. State, 584 So.2d 383, 388 (Miss.1991): “To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial.” Griffith was quoting Idaho v. Wright, 497 U.S. 805, 822, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), a case decided before the United States Supreme Court changed its approach to the Sixth Amendment's Confrontation Clause in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

. At one point during Benjamin’s testimony, the trial judge threatened to remove someone in the audience for "prompting” the witness.

. Moreover, Benjamin told Kahle that two different adults had sexually abused him, and it is far from clear which of them is alleged to have done what.

. This reference was to Hurricane Katrina, which ravaged Mississippi in August of 2005.

. On appeal, we may take judicial notice that a certain city is located in a particular county. Bearden v. State, 662 So.2d 620, 625 (Miss.1995) (citing Clark v. State, 230 Miss. 143, 146, 92 So.2d 452, 453 (1957); Tillman v. State, 213 Miss. 136, 139, 56 So.2d 91, 92 (1952)). The Mississippi Official and Statistical Register at 358 (2008-2012), places Lena in Leake County, Mississippi.