# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KA-00311-SCT

*SAMUEL ALLEN NUCKOLLS a/k/a SAMMY
NUCKOLLS a/k/a SAM ALLEN NUCKOLLS a/k/a
SAM NUCKOLLS a/k/a SAMUEL NUCKOLLS a/k/a
SAMUEL A. NUCKOLLS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/14/2012 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM, SR. |
| TRIAL COURT ATTORNEYS: | RONALD D. MICHAEL |
| | SETH POUNDS |
| | ALICIA M. AINSWORTH |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RONALD D. MICHAEL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALICIA M. AINSWORTH |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART - 12/10/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     In this thirteen-count, video-voyeurism bench trial, the parties agreed to forego calling witnesses and to have the trial judge decide the case on a submission of stipulated facts. The stipulation omitted any reference to where ten of the thirteen counts took place. So, because the State failed to prove venue as to those ten counts, we must reverse them. We affirm Nuckolls's remaining convictions.

**FACTS AND PROCEDURAL HISTORY**

¶2. On February 14, 2012, a DeSoto County grand jury indicted Samuel Nuckolls for thirteen violations of Mississippi Code Section 97-29-63, which provides:

> Any person who with lewd, licentious or indecent intent secretly photographs, films, videotapes, records or otherwise reproduces the image of another person without the permission of such person when such a person is located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, including, but not limited to, private dwellings or any facility, public or private, used as a restroom, bathroom, shower room, tanning booth, locker room, fitting room, dressing room or bedroom shall be guilty of a felony . . . .[1]

¶3. The original indictment charged that Nuckolls "secretly filmed and videotaped" women in his bathroom on thirteen occasions. When Nuckolls moved to dismiss most of the counts because they had occurred outside the two-year statute of limitations,[2] the State obtained an amended indictment, adding language charging that Nuckolls "otherwise reproduced" the images within the statute of limitations by saving them on his computer. Nuckolls's attorney then moved for a continuance, arguing that the State had made no allegation and had no proof as to where the images had been reproduced. The circuit judge denied the motion and found that all of the counts survived the statute of limitations.

¶4. Nuckolls then waived his right to a trial by jury, and the parties submitted an agreed stipulation of facts to the circuit judge, asking the circuit judge to decide the case based on that stipulation. The stipulation included no information as to where the images allegedly were reproduced, and Nuckolls preserved his challenge to the statute of limitations. Based

---

[1] Miss. Code Ann. § 97-29-63(1) (Rev. 2014).

[2] Miss. Code Ann. § 99-1-5 (Rev. 2015).

2

on the stipulation of facts, the circuit judge convicted Nuckolls on all thirteen counts. On appeal, Nuckolls attacks his ten transfer convictions on two grounds: (1) the statute does not criminalize the transfer of images to a computer; and (2) even if it does, the State failed prove where the transfer took place, or who made the transfer. He also challenges one of his three filming convictions, arguing that the State failed to prove that it occurred within the statute of limitations. He has not appealed the other two filming convictions.

¶5.     Because we find that the State failed to prove venue, we reverse the transfer convictions. We affirm the remaining convictions.

**ANALYSIS**

**I.     The Transfer Convictions**

¶6.     When we consider the sufficiency of the evidence, our "'relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[3] "'The state receives the benefit of all favorable inferences that may reasonably be drawn from the evidence.'"[4]

¶7.     The stipulation—which was the sole evidence at trial—is entirely silent as to where the transfers occurred. The State has not suggested otherwise in its brief. And when asked about the venue issue at oral argument, the State responded that, because Nuckolls resides

---

[3] ***Conner v. State***, 138 So. 3d 143, 147-48 (Miss. 2014) (quoting ***Young v. State***, 119 So. 3d 309, 315 (Miss. 2013)).

[4] ***Conner***, 138 So. 3d at 148 (quoting ***Hughes v. State***, 983 So. 2d 270, 276 (Miss. 2008)).

in DeSoto County, the trial judge was within his discretion to find that the transfers took place there.

¶8.    We consistently have held that venue is an essential part of the State's burden of proof that "may be proved by direct or circumstantial evidence."[5]  This precedent is based on the Mississippi Constitution's requirement that "an accused has the right to trial 'by an impartial jury of the county where the offense was committed.'"[6] Also, venue in this case—as in all criminal cases—constitutes a material allegation of the indictment that becomes a part of the State's burden of proof.

¶9.    No evidence was provided at trial to show where the transfers took place.  And to imply, as the State suggests, that the transfers occurred in DeSoto County simply because Nuckolls resided there—even though he allegedly used a laptop computer that (1) was purchased in Tennessee, (2) was found in Arkansas, and (3) could operate anywhere—would strain credibility and obviate the State's burden of proof.

¶10.    The stipulation did not state—as the separate opinion by Presiding Justice Michael K. Randolph inaccurately suggests—that the transfers occurred at either of Nuckolls's residences.  For example, for Count 1 (which largely mirrors the language of the other counts), the stipulation states in its entirety:

---

[5] *Smith v. State*, 646 So. 2d 538, 541 (Miss. 1994) (citing *Jones v. State*, 606 So. 2d 1051, 1055 (Miss. 1992); *Griffin v. State*, 381 So. 2d 155, 158 (Miss. 1980); *Jackson v. State*, 246 So. 2d 553, 555 (Miss. 1971)).

[6] *Rogers v. State*, 95 So. 3d 623, 630 (Miss. 2012) (quoting Miss. Const. art. 3, § 26); *see also* Miss. Code Ann. § 99-11-3 (Rev. 2015) ("The local jurisdiction of all offenses, unless otherwise provided by law, shall be in the county where committed.").

Facts regarding COUNT 1

In Count 1 the State would show that SAMUEL NUCKOLLS, between the dates of June 1, 2007 and October 29, 2011, did willfully, unlawfully and feloniously, with lewd, licentious or indecent intent secretly photograph, film, videotape, record, or otherwise reproduce the image of another, to wit: Ashley Fisher, without the permission of Ashley Fisher when Ashley Fisher was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, to-wit: in the bathroom.

The State would offer four videos. The first video, labeled "af" shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. That video shows Ashley Fisher enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Ashley Fisher would testify that she did not give permission or consent to be recorded.

The second video, labeled afh shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. That video shows Ashley Fisher enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Ashley Fisher would testify that she did not give permission or consent to be recorded. This video appears to be older than the video labeled "af" due to a piece of furniture not being present in "afh."

The third video, labeled "afp" shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. That video shows Ashley Fisher enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Ashley Fisher would testify that she was pregnant in this video. Ashley Fisher would testify that she did not give permission or consent to be recorded. The piece of furniture seen in "af" is present.

The fourth video, labeled "afrp" shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. That video shows Ashley Fisher enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Ashley Fisher would testify that she did not give permission or consent to be recorded. Ashley Fisher would testify that she was pregnant when this was recorded. She would further testify that this video took place some time after "afp."

Testimony would establish that these videos were found on the Defendant's Apple MacBook Pro (Serial number W8047932ATMA1344). The videos were all located in the subfolder orange.

¶11. Nothing in the stipulation suggests where the transfer to the laptop took place. Every mention of Nuckolls's residence—in this count and all others—pertains only to where the filming took place. And the separate opinion cannot take the position that the two events—filming and transferring to the laptop—took place close in time because, as already stated, the filming took place outside the statute of limitations, so the transfer to the computer must have taken place long after the filming. And, with regard to the transfers' locations, the stipulation is completely silent.

¶12. Also, Presiding Justice Randolph incorrectly contends that Nuckolls waived this assignment of error by failing to obtain a ruling in the trial court. As stated, venue is a constitutional requirement, and this Court has said repeatedly "that the question could be raised for the first time in [the Supreme Court] court," on appeal.[7] As recently as 2012, we have recognized and reaffirmed this principle.[8]

¶13. Nuckolls has raised this issue on appeal. Under an issue heading labeled "The Trial Court Erred in Finding Samuel Nuckolls Guilty and Subsequently Overruling Defendant's

---

[7] *Dorsey v. State*, 141 Miss. 60, 106 So. 827, 828 (1926) (citing *Monroe v. State*, 104 So. 451 (Miss. 1925); *Slaton v. State*, 134 Miss. 419, 98 So. 838 (1924); *Sullivan v. State*, 136 Miss. 773, 101 So. 683 (1924); *Sandifer v. State*, 136 Miss. 836, 101 So. 862 (Miss.1924); *Pickle v. State*, 137 Miss. 112, 102 So. 4 (1924); *Carpenter v. State*, 102 So. 184 (Miss. 1924); *Norwood v. State*, 129 Miss. 813, 93 So. 354 (1922);*Quillen v. State*, 106 Miss. 831, 64 So. 736 (1914); *Cagle v. State*, 106 Miss. 370, 63 So. 672 (1913)).

[8] *Moreno v. State*, 79 So. 3d 508, 511 (Miss. 2012) (citing *Gillett v. State*, 56 So. 3d 469, 502 (Miss. 2010) ("[V]enue in criminal cases may be raised for the first time on direct appeal . . . .").

Motion for Judgment of Acquittal Notwithstanding the Verdict or in the Alternative for a New Trial," Nuckolls argued that "the State presented no evidence to the Court showing *where* the transfer took place . . . ." With regard to the State's burden of proof, a complaint that the State failed to prove where the crime took place can be read only as a statement that the State failed to prove venue.

¶14.   Further, the record contradicts Presiding Justice Randolph's assertion that Nuckolls "agreed that the evidence the State would offer was sufficient to convict Nuckolls." When the parties appeared before the circuit judge to submit the stipulation of facts, the parties repeatedly affirmed that they were asking the judge to adjudicate the defendant's guilt. Defense counsel, the circuit judge, and the prosecutor each specifically noted at one point or another that the judge had to determine whether the stipulation established Nuckolls's guilt. In fact, at one point when the circuit judge specifically asked if Nuckolls was entering a guilty plea, the prosecutor informed the judge that he had to determine Nuckolls's guilt.

¶15.   In light of these repeated comments, we cannot agree with Presiding Justice Randolph's characterization that Nuckolls admitted that the stipulation provided sufficient evidence to convict him.

¶16.   It is true that, at one point in the proceeding, the circuit judge proposed a procedure for the parties to appear at a later date and make arguments as to Nuckolls's guilt, and for the judge to render a verdict and hold a sentencing hearing. Contrary to other statements throughout the proceeding, the State suggested—in response to the proposed procedure—that it believed the parties were agreeing that the evidence was sufficient to convict Nuckolls.

7

Nuckolls's counsel then made a statement, which from the appellate transcript and without the benefit of being present in the courtroom, could be read either as agreement with the State's statement or as agreement to the judge's proposed procedure. The separate opinion reads this statement as the former, but the record supports only the latter. And even if we were to agree with Presiding Justice Randolph that Nuckolls was attempting to plead guilty, none of the required procedures was followed to ensure that, in doing so, he made a knowing and intelligent waiver of all of his rights.

¶17.    But there was no attempt to plead guilty. All involved in that hearing repeatedly asserted that the judge had to determine whether Nuckolls was guilty or innocent. To adopt Presiding Justice Randolph's reading would conflict with the rest of the parties' and the judge's statements. And the circuit judge apparently did not believe Nuckolls had admitted his guilt because, when the court reconvened, the trial judge began by stating

> heretofore the Court was informed by counsel for the defense and counsel for the state that they wished a bench trial. That is, ***they wanted the Court to rule on the defendant's guilt or innocence*** based on a stipulation of fact.

(Emphasis added.)    The judge then rendered his verdict count by count, formally finding that the stipulation provided sufficient evidence to support each one. In no way did he suggest that the parties had conceded that the stipulation provided sufficient evidence.

¶18.    Because the State offered no evidence to meet its constitutional burden to prove venue, we must reverse the transfer convictions.[9]

---

[9] Because we reverse Nuckolls's transfer convictions based on the State's failure to prove venue, we need not address Nuckolls's contention that the statute does not criminalize this conduct.

## II. The State's Evidence on Count 11

¶19. Nuckolls argues that the State failed to prove that count eleven occurred within the statute of limitations because the parties stipulated that the filming occurred within a range of dates, including dates both within and outside the two-year statute of limitations. When considering the sufficiency of the evidence, our "'relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[10] "'The state receives the benefit of all favorable inferences that may reasonably be drawn from the evidence.'"[11] And the State bears the burden to prove that an offense occurred within the statute of limitations.[12]

¶20. Here, the parties stipulated that count eleven occurred between June 1, 2007, and October 29, 2011. They also stipulated that it occurred at Nuckolls's Meadow Ridge residence, where he moved on October 6, 2009. So the date range includes a short time period—October 6, 2009, to October 28, 2009—more than two years before Nuckolls's arrest on October 29, 2011, and outside the statute of limitations.[13]

---

[10] *Conner*, 138 So. 3d at 147–48 (quoting *Young*, 119 So. 3d at 315).

[11] *Conner*, 138 So. 3d at 148 (quoting *Hughes*, 983 So. 2d at 276).

[12] *McLaughlin v. State*, 133 Miss. 725, 98 So. 148 (1923).

[13] *See* Miss. Code Ann. § 99-1-5 (Rev. 2015) ("A person shall not be prosecuted for any other offense not listed in this section unless the prosecution for the offense is commenced within two (2) years next after the commission thereof."); Miss. Code Ann. § 99-1-7 (Rev. 2015) ("A prosecution may be commenced, within the meaning of Section 99-1-5 by the issuance of a warrant, or by binding over or recognizing the offender to compel his appearance to answer the offense, as well as by indictment or affidavit.").

¶21. The parties also stipulated, however, that "[t]he [count eleven] video ends with Sammy Nuckolls entering with a silver laptop consistent with the Apple MacBook Pro." Nuckolls purchased the Apple MacBook Pro on January 5, 2011. So, drawing all reasonable inferences in favor of the State, we find that the State presented sufficient evidence because the stipulation gives rise to a strong inference that the video depicts the same computer purchased in January 2011, and that the recording must have occurred after that date.

## CONCLUSION

¶22. Nuckolls has not appealed his convictions on counts three and four, so those convictions are not before us. The State presented sufficient evidence to prove that count eleven—filming—occurred within the statute of limitations, so that conviction is affirmed. But the State failed to prove venue for counts one, two, five, six, seven, eight, nine, ten, twelve, and thirteen, so we reverse the trial count's judgment as to those convictions.

¶23. **COUNT ELEVEN: CONVICTION OF VIDEO VOYEURISM AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SENTENCE TO RUN CONCURRENTLY WITH THE SENTENCE IN COUNT THREE, AFFIRMED. CONVICTIONS AND SENTENCES IN COUNTS ONE, TWO, FIVE, SIX, SEVEN, EIGHT, NINE, TEN, TWELVE, AND THIRTEEN ARE REVERSED.**

**WALLER, C.J., LAMAR, KITCHENS, KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE, J.**

**RANDOLPH, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶24. Pursuant to the stipulation presented at trial, which is attached as an appendix to this opinion, the parties stipulated that the only issue to be "preserved for appeal" was the issue

10

of the statute of limitations, save for counts three and four–"all arguments and testimony regarding the statute of limitations are preserved for appeal." Today's majority goes outside of the stipulated facts and issues preserved for appeal by overturning ten of Sam Nuckolls's thirteen convictions based on its *sua sponte* raising and then deciding an issue which was neither raised nor briefed. Accordingly, I would affirm the entire judgment of the trial court.

¶25.    Nuckolls was indicted on thirteen counts of "wilfully, unlawfully and feloniously, with lewd, licentious or indecent intent, secretly photograph[ing], film[ing], videotap[ing], record[ing], or otherwise reproduc[ing] the image of another. . . ." The amended indictment charged that each count, including the "otherwise reproducing" took place at one of Nuckolls's two homes in DeSoto County.

¶26.    Nuckolls elected to waive the constitutional right upon which the majority premises its opinion. *See* Maj. Op. ¶8 and Miss. Const. art 3, §26.  Then Nuckolls and the State entered into a binding and conclusive stipulation of facts, with Nuckolls making no claim of improper waiver. The stipulation is not "entirely silent as to where the transfers occurred." (Maj. Op. ¶7). The stipulation tracked the exact language of the amended indictment, which included the alleged venue, summarizing the evidence that the State would offer at trial. The parties agreed that the evidence the State would offer was sufficient to convict Nuckolls, Nuckolls argued that the crimes took place outside of the statute of limitations.

> [An] Agreed Statement of Facts on which the parties submit [a] case for trial is binding and conclusive on them, and the facts stated are not subject to subsequent variation. So, the parties will not be permitted to deny the truth of the facts stated, or the truth, competency or sufficiency of any admission contained in the Agreed Statement or to maintain a contention contrary to the Agreed Statement or be heard to claim that there are other facts that the Court

11

may presume to exist, or to suggest, on appeal, that the facts were other than stipulated, or that any material fact was omitted.

*In re Collins*, 524 So. 2d 553, 561 (Miss. 1987) (citing 83 C.J.S. *Stipulations* § 25 (1954)).

¶27. Estoppel, properly applied, should preclude Nuckolls's offering a contention contrary to the stipulation or suggesting on appeal that facts other than those stipulated were omitted. Additionally, Nuckolls never contested venue before the trial court. *See Walker v. State*, 913 So. 2d 198, 217 (Miss. 2005) ("Failure to raise an issue at trial bars consideration on an appellate level."). Nor does he offer that argument here today.[14] Nuckolls neither raised, addressed, nor briefed the issue of whether the State failed to establish venue.[15] In his fourteen-page brief, Nuckolls made a statement that "the State presented no evidence to the Court showing where the transfer took place. . . ." Moreover, Nuckolls did not provide any authority that the State failed to provide evidence of venue other than what was charged in his amended indictment and agreed upon in the binding and conclusive stipulation of facts.

¶28. Today's holding overturns ten of Nuckolls's convictions for reasons never contested before the trial court. Our role is not to act as an advocate for the defendant or the State.

---

[14] The majority is silent as to how or why it is addressing an issue not raised or briefed. The only mechanism by which this Court could decide such an issue is the plain-error doctrine. However, this Court can reverse a conviction only if Nuckolls's "substantive or fundamental rights are affected," and if the error "resulted in a manifest miscarriage of justice." *Foster v. State*, 148 So. 3d 1012, 1018 (Miss. 2014) (quoting *Grayer v. State*, 120 So. 3d 964, 969 (Miss. 2013)). There is no manifest miscarriage of justice in this case because the sentences for the ten counts the majority overturns are to run concurrently with Counts 3 and 4, which Nuckolls did not appeal.

[15] Moreover, the majority's pinpoint citation in footnote 8, *Moreno v. State*, 79 So. 3d 508, is wholly distinguishable from the unique circumstances presented in this case and should not be relied upon.

12

Creating an issue never presented is an act of advocacy and is cautiously applied only in cases in which we have a firm conviction that a manifest miscarriage of justice has occurred. Venue was never the issue for which Nuckolls sought relief. I respectfully oppose such action and would decline to extend relief as to that issue, it not having been raised, briefed, or addressed. I would affirm the judgment of the trial court as to all counts.

**PIERCE, J., JOINS THIS OPINION.**

STIPULATED FACTS
FACTS COMMON TO ALL COUNTS

The State would offer the testimony of Charlie Byrd, Bobby Ray Trump and/or Wyles Andrew of the Gosnell Police Department. Their testimony would establish they received a criminal complaint on October 25, 2011. Gosnell police investigated the complaint. Defendant, Sammy Nuckolls, was given his Miranda warning, waived his rights, and proceeded to speak with investigators. Defendant admitted he recorded video images of two women in Mississippi using a video camera that appeared to be a pen. This information was passed on to Olive Branch Police for further investigation.

An Apple Macbook laptop was in the Defendant's possession and was seized as evidence by Gosnell Police Department. The Defendant admitted to Gosnell authorities that the videos he took in Olive Branch were located on that computer. That Macbook was given to Olive Branch PD by Gosnell police. A search warrant was obtained and the videos identified in this indictment were found on that computer. A full forensic examination of the silver MacBook was conducted with the assistance of the FBI.

On October 26, 2011 Detective Jeff Abbott of the Olive Branch Police Department followed up on the complaint. They made contact with Kimberly Nuckolls. She signed a consent to search form of the home she occupied with Sammy Nuckolls located at 7693 Meadow Ridge Lane, Olive Branch, Mississippi, located in DeSoto County. Photographs were taken of the bathroom on Meadow Ridge Lane. Several items of evidence were seized.

Testimony and evidence would show that the Deed for the 7693 Meadow Ridge Lane, Olive Branch home was recorded with the clerk on October 6, 2009. This would show that Sammy Nuckolls and Kimberly Nuckolls did not own the house prior to that date. Prior to that date they resided at 9848 Pigeon Roost Circle, Olive Branch, MS. The events in all of the recordings contained in this indictment occurred at either of these 2 addresses.

Detective Abbott and a witness from Apple, Inc would testify that a silver Apple MacBook Pro (Serial number W8047932ATMA1344) was purchased on January 5th, 2011 at the Apple Store in Germantown, TN (7615 West Farmington Boulevard Germantown, TN). The receipt/ purchase number is R0206264496. Apple's records indicated that this MacBook Pro was purchased by the Defendant, Sammy Nuckolls. It can be reasonably inferred that the videos in question on the Apple Computer were not there prior to January 5, 2011.



EXHIBIT
A

14

Facts regarding COUNT 1

In Count 1 the State would show that SAMUEL NUCKOLLS, between the dates of June 1, 2007 and October 29, 2011, did wilfully, unlawfully and feloniously, with lewd, licentious or indecent intent secretly photograph, film, videotape, record, or otherwise reproduce the image of another, to wit: Ashley Fisher, without the permission of Ashley Fisher when Ashley Fisher was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, to-wit: in the bathroom.

The State would offer four videos. The first video, labeled "af" shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. That video shows Ashley Fisher enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Ashley Fisher would testify that she did not give permission or consent to be recorded.

The second video, labeled afh shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. That video shows Ashley Fisher enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Ashley Fisher would testify that she did not give permission or consent to be recorded. This video appears to be older than the video labeled "af" due to a piece of furniture not being present in "afh".

The third video, labeled "afp" shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. That video shows Ashley Fisher enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Ashley Fisher would testify that she was pregnant in this video. Ashley Fisher would testify that she did not give permission or consent to be recorded. The piece of furniture seen in "af" is present.

The fourth video, labeled "afrp" shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. That video shows Ashley Fisher enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Ashley Fisher would testify that she did not give permission or consent to be recorded. Ashley Fisher would testify that she was pregnant when this was recorded. She would further testify that this video took place some time after "afp".

Testimony would establish that these videos were found on the Defendant's Apple MacBook Pro (Serial number W8047932ATMA1344). The videos were all located in the subfolder orange.

15

Facts Regarding COUNT 2

The State would show that SAMUEL NUCKOLLS between the dates of June 1, 2007 and October 29, 2011 did wilfully, unlawfully and feloniously, with lewd, licentious or indecent intent secretly photograph, film, videotape, record, or otherwise reproduce the image of another, to wit: Joy Ligon Shults without the permission of Joy Ligon Shults when Joy Ligon Shults was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, to-wit: in the bathroom.

The fourth video, labeled "jl" shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. That video shows Joy Ligon Shults enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Joy Ligon Shults would testify that she did not give permission or consent to be recorded. She would further testify that the video took place some time in June of 2008.

Testimony would establish that these videos were found on the Defendant's Apple MacBook Pro (Serial number W8047932ATMA1344). The video was located in the subfolder orange.

Facts Regarding COUNT 3

In count 3 the State would show that SAMUEL NUCKOLLS on or about the 19TH day of October, 2011, did wilfully, unlawfully and feloniously, with lewd, licentious or indecent intent secretly photograph, film, videotape, record, or otherwise reproduce the image of another, to wit: Kelley Epps without the permission of Kelley Epps when Kelley Epps was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, to-wit: in the bathroom.

The State would offer a video that shows Sammy Nuckolls setting up video equipment in the bathroom located at 7693 Meadow Ridge Lane, Olive Branch, Mississippi. That video shows Kelley Epps enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Kelley Epps would testify that she did not give permission or consent to be recorded. She would testify that these events occurred on October 19, 2011 while she was babysitting. The State would show that the Defendant admitted to making this video to Gosnell authorities.

16

The State would offer an additional video of Kelley Epps taken in the same fashion in the home located at 9848 Pigeon Roost Circle. The video was recorded in the same fashion as above.

Testimony would establish that these videos were found on the Defendant's Apple MacBook Pro (Serial number W8047932ATMA1344). The first video is located in the subfolder Magic. The second video was located in the subfolder orange and is titled ke.

Facts regarding COUNT 4

In Count 4 the State would offer testimony that would show SAMMY NUCKOLLS, on or about the 14TH day of October 2011 did wilfully, unlawfully and feloniously, with lewd, licentious or indecent intent secretly photograph, film, videotape, record, or otherwise reproduce the image of another, to wit: Christen Klienderer without the permission of Christen Klienderer when Christen Klienderer was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, to-wit: in the bathroom.

The State would offer a video that shows Sammy Nuckolls setting up video equipment in the bathroom located at 7693 Meadow Ridge Lane, Olive Branch, MS. That video shows Christen Klienderer enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. The video ends with the Defendant coming back into frame and the screen going black. Christen Klienderer would testify that this occurred on October 14, 2011. She would further testify that she did not give permission or consent to be recorded. The State would offer that the Defendant confessed to Gosnell authorities that he made this video.

Testimony would establish that this video was found on the Defendant's Apple MacBook Pro (Serial number W8047932ATMA1344) in the subfolder Magic.

Facts regarding COUNT 5

In Count 5 the State would show that SAMUEL NUCKOLLS, between the dates of June 1, 2007 and October 29, 2011 did wilfully, unlawfully and feloniously, with lewd, licentious or indecent intent secretly photograph, film, videotape, record, or otherwise reproduce the image of another, to wit: Emily Medford without the permission of Emily Medford when Emily Medford was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, to-wit: in the bathroom.

17

The State would offer a video labeled "em" shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. That video shows Emily Medford enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Emily Medford would testify that she did not give permission or consent to be recorded.

Testimony would establish that these videos were found on the Defendant's Apple MacBook Pro (Serial number W8047932ATMA1344). The video was located in the subfolder orange.

Facts regarding COUNT 6

In Count 6 the State would show that SAMUEL NUCKOLLS between the dates of June 1, 2007 and October 29, 2011, did wilfully, unlawfully and feloniously, with lewd, licentious or indecent intent secretly photograph, film, videotape, record, or otherwise reproduces the image of another, to wit: Jenna Tharp without the permission of Jenna Tharp when Jenna Tharp was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, to-wit: in the bathroom.

The State would offer a video labeled "video_ts" shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. That video shows Jenna Tharp enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Jenna Tharp would testify that she did not give permission or consent to be recorded.

Testimony would establish that these videos were found on the Defendant's Apple MacBook Pro (Serial number W8047932ATMA1344). The video was located in the subfolder orange.

Facts regarding COUNT 7

In Count 7 the State would show that SAMUEL NUCKOLLS between the dates of June 1, 2007 and October 29, 2011, did wilfully, unlawfully and feloniously, with lewd, licentious or indecent intent secretly photograph, film, videotape, record, or otherwise reproduce the image of another, to wit: Amy Butler without the permission of Amy Butler when Amy Butler was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, to-wit: in the bathroom.

The State would offer a video labeled "ab" shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch,

18

Mississippi. That video shows Amy Butler enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Amy Butler would testify that she did not give permission or consent to be recorded.

Testimony would establish that these videos were found on the Defendant's Apple MacBook Pro (Serial number W8047932ATMA1344). The video was located in the subfolder orange.

Facts regarding COUNT 8

In Count 8 the State would show that SAMUEL NUCKOLLS between the dates of June 1, 2007 and October 29, 2011 did wilfully, unlawfully and feloniously, with lewd, licentious or indecent intent secretly photograph, film, videotape, record, or otherwise reproduce the image of another, to wit: Rachael Gibbons without the permission of Rachael Gibbons when Rachael Gibbons was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, to-wit: in the bathroom.

The State would offer a video labeled "rg" shows the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. The video starts with Sammy Nuckolls setting the camera. That video shows Rachel Gibbons enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Rachel Gibbons would testify that she did not give permission or consent to be recorded.

Testimony would establish that these videos were found on the Defendant's Apple MacBook Pro (Serial number W8047932ATMA1344). The video was located in the subfolder orange.

Facts regarding COUNT 9

In Count 9 the State would show that SAMUEL NUCKOLLS between the dates of December 1, 2007 and October 29, 2011, did wilfully, unlawfully and feloniously, with lewd, licentious or indecent intent secretly photograph, film, videotape, record, or otherwise reproduce the image of another, to wit: Brittany Cooper Prather without the permission of Brittany Cooper Prather when Brittany Cooper Prather was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, to-wit: in the bathroom.

The State would offer a video labeled "jb" shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. That video shows Brittany Cooper Prather enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Brittany Cooper Prather

19

would testify that she did not give permission or consent to be recorded. She would testify that she believes the video to have been recorded sometime between December 2007 and January of 2008.

Testimony would establish that these videos were found on the Defendant's Apple MacBook Pro (Serial number W8047932ATMA1344). The video was located in the subfolder orange.

Facts regarding COUNT 10

In Count 10 the State would show that SAMUEL NUCKOLLS between the dates of December 1, 2007 and October 29, 2011 did wilfully, unlawfully and feloniously, with lewd, licentious or indecent intent secretly photograph, film, videotape, record, or otherwise reproduce the image of another, to wit: Jennifer Cooper without the permission of Jennifer Cooper when Jennifer Cooper was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, to-wit: in the bathroom.

The State would offer a video labeled "jb". It is a continuation of the video in Count 9. That video shows Jennifer Cooper enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Jennifer Cooper would testify that she did not give permission or consent to be recorded. She would testify that these events occurred sometime between December of 2007 and January of 2008. She would testify she was 17 years of age at the time.

Testimony would establish that these videos were found on the Defendant's Apple MacBook Pro (Serial number W8047932ATMA1344). The video was located in the subfolder orange.

Facts regarding COUNT 11

In Count 11 the State offers that SAMUEL NUCKOLLS between the dates of June 1, 2007 and October 29, 2011 did wilfully, unlawfully and feloniously, with lewd, licentious or indecent intent secretly photograph, film, videotape, record, or otherwise reproduce the image of another, to wit: Melissa Arrowood without the permission of Melissa Arrowood when Melissa Arrowood was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, to-wit: in the bathroom.

The State would offer a video labeled "1013.avi" shows Melissa Arrowood enter the bathroom, undress, and take a shower in the bathroom located at the Meadow Ridge Lane, Olive Branch address. She finishes and leaves the bathroom.

20

The video ends with Sammy Nuckolls entering with a silver laptop consistent with the Apple MacBook Pro. Melissa Arrowood would testify that she did not give permission or consent to be recorded.

Testimony would establish that these videos were found on the black and gold video pen with USB that was obtained from the upstairs office of the Nuckolls residence on Meadow Ridge Lane, Olive Branch.

Facts regarding COUNT 12

In Count 12 the State offers that SAMUEL NUCKOLLS, between the dates of June 1, 2007 and October 29, 2011 did wilfully, unlawfully and feloniously, with lewd, licentious or indecent intent secretly photograph, film, videotape, record, or otherwise reproduce the image of another, to wit: Catherine Barber Hunt without the permission of Catherine Barber Hunt when Catherine Barber Hunt was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, to-wit: in the bathroom.

The State would offer a video labeled "kb" shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. That video shows Catherine Barber Hunt enter the bathroom, undress, and take a shower. She finishes and leaves the bathroom. Catherine Barber Hunt would testify that she did not give permission or consent to be recorded.

Testimony would establish that these videos were found on the Defendant's Apple MacBook Pro (Serial number W8047932ATMA1344). The video was located in the subfolder orange.

Facts regarding COUNT 13

The State would offer that SAMUEL NUCKOLLS between the dates of June 1, 2007 and October 29, 2011 did wilfully, unlawfully and feloniously, with lewd, licentious or indecent intent secretly photograph, film, videotape, record, or otherwise reproduce the image of another, to wit: Mallory Nash Hurst without the permission of Mallory Nash Hurst when Mallory Nash Hurst was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, to-wit: in the bathroom.

The State would offer a video labeled "mn" shows Sammy Nuckolls setting up video equipment in the bathroom located at 9848 Pigeon Roost Circle, Olive Branch, Mississippi. That video shows Mallory Nash enter the bathroom, undress, and take

21

a shower. She finishes and leaves the bathroom. Mallory Nash would testify that she did not give permission or consent to be recorded.

Testimony would establish that these videos were found on the Defendant's Apple MacBook Pro (Serial number W8047932ATMA1344). The video was located in the subfolder orange.

## STIPULATIONS AND ISSUES

The Parties stipulate that the issue to be preserved for appeal regards the Statute of Limitation, Miss. Code. Ann. §99-1-5. The parties agree that Counts 3 and 4 are clearly within the Statute of limitations. The parties further agree that the counts that occurred at the Pigeon Roost Circle address occurred prior to October 25, 2009. The Parties agree that all arguments and testimony regarding the Statute of Limitations are preserved for appeal. Additionally, the parties agree that objections were timely and preserved for appeal as to the issues regarding Statute of Limitations. The identities of the individuals are presumed to be accurate.