# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-KA-01276-SCT

*CHARLES RAY McCOLLUM a/k/a CHARLES McCOLLUM, JR. a/k/a CHARLES RAY McCULLUM*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/20/2021 |
| TRIAL JUDGE: | HON. STANLEY ALEX SOREY |
| TRIAL COURT ATTORNEYS: | MEGAN STUARD THORNTON |
| | WADE THOMAS UNDERWOOD |
| | CHRISTINA HOPSON HOLCOMB |
| | CHRISTOPHER DOUGLAS HENNIS |
| | WILLIAM KANNAN STUBBS |
| | W. TERRELL STUBBS |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | CHRISTOPHER DOUGLAS HENNIS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/07/2023 |
| MOTION FOR REHEARING FILED: | |

EN BANC.

COLEMAN, JUSTICE, FOR THE COURT:

¶1. A Simpson County jury convicted Charles Ray McCollum of one count of grand larceny for stealing several items from property owned by Brian Mangum. He appeals, claiming the trial court erred by refusing to suppress evidence obtained from the search of

his residence, allowing prejudicial hearsay, and denying McCollum's motion for a mistrial. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Brian Mangum owned property located at 1713 Highway 541, Magee, Mississippi, that contained a house and shed. He had inherited the property from his grandparents and did not reside there. Mangum kept cattle on the property and generally checked on his cattle each day. Mangum testified that, on or around October 14, 2019, he visited the property to check on his cattle and noticed that both the back door of the house and the door to his shop were open. Mangum then contacted the Simpson County Sheriff's Office.

¶3. Lieutenant Investigator Leon Wedgeworth, an investigator with the Simpson County Sheriff's Office at that time, testified that when he arrived at the property, he observed a broken window in the back of the house and red paint on the window sill. Mangum reported that a red ox yoke was missing from the house. Mangum also identified as missing from the house a washing machine and television set. Investigator Wedgeworth next testified that the latch and locking mechanism on the shed had been broken off. He determined that an air compressor, tool boxes containing tools, and an arc welder were missing from the shed.

¶4. After Investigator Wedgeworth left the property, Mangum testified that he installed a cellular trail camera on a car shed located in between the house and the shop. The trail camera could detect motion and send real-time pictures to an app on Mangum's cell phone. On October 15, 2019, at approximately 2:00 p.m., the trail camera transmitted a picture of a blue pickup truck with a "Vote for Toxi Allen" sticker located on the driver's side.

2

Mangum stated that the trail camera transmitted a picture of the truck leaving the property a short time later and that the passenger side door handle of the truck had contained duct tape.

¶5. On October 16, 2019, Investigator Wedgeworth met Mangum at L&D Scrap, where they identified items that belonged to Mangum. Investigator Wedgeworth testified that he had also obtained from L&D Scrap scale purchase tickets dated October 15, 2019. The recipient on the tickets was listed as McCollum, and a copy of his driver's license was attached. The scale purchase tickets were marked for identification purposes and were not entered into evidence at that time.

¶6. Investigator Wedgeworth testified that the sheriff's office had "had several thefts throughout the county in that area." He stated that McCollum had been identified as a suspect in those thefts. Also on October 16, Investigator Wedgeworth instructed dispatch to search the National Crime Information Center (NCIC) for McCollum's driver's license and vehicle tag information. Investigator Wedgeworth testified that the tag number listed on NCIC for McCollum matched the tag number of the vehicle that the sheriff's office had identified as belonging to McCollum. Over defense counsel's objection, the NCIC report was admitted into evidence with the words "Vehicle Used" handwritten at the top of the report. Investigator Wedgeworth testified that he had written the words "Vehicle Used" on the NCIC report because "[t]hat vehicle was identified when we used the database LeadsOnline as selling scrap to scrap yards." In a proffer, Investigator Wedgeworth explained that scrap

yards and pawnshops report items that they purchase to LeadsOnline. *See* LeadsOnline, https://www.leadsonline.com/main/law-enforcement.php (last visited May 11, 2023).

¶7. Mangum testified that, on October 18, 2019, the trail camera again transmitted pictures of the blue pickup truck, and he proceeded to the property at that time. Mangum also notified the sheriff's department that the pickup truck was back on the property. Mangum testified that, when he arrived on the property, he observed the blue pickup truck at the edge of the woods and that the pickup truck had the same "Vote for Toxi Allen" sticker on the driver's side and that the door handle was "messed up on the passenger side." Mangum, who knew McCollum most of his life, then watched McCollum walk out of the woods toward him. Mangum testified that McCollum told him that he had been gathering acorns in the woods. Mangum held McCollum at gunpoint until law enforcement arrived. Investigator Wedgeworth testified that when he arrived at the property, he identified and arrested McCollum.

¶8. Investigator Wedgeworth filed an application for a search warrant for McCollum's residence. In the search warrant affidavit, Investigator Wedgeworth wrote, *inter alia*, that the "[t]he vehicle bearing Mississippi tag CV1-3557 was identified as the vehicle used in the crime. The vehicle was on camera during the commission of the crime." McCollum filed a motion to suppress the search warrant and argued that the affidavit had contained misleading and false statements to establish probable cause, but the trial court never ruled on McCollum's motion.

¶9. Investigator Wedgeworth testified that, the day the sheriff's office executed the search warrant, he had called Mangum and described items as he walked through McCollum's residence. The sheriff's office recovered the following items that Mangum had reported as stolen: a black toolbox; a black and yellow Stanley toolbox; an arc welding machine; a generator; a hand carved red ox yoke; a washing machine; and a Sanyo television set. At trial, Mangum identified the items as his.

¶10. During Investigator Wedgeworth's testimony, the State requested to approach the bench. It was determined that a witness for the State, Patsy Harper, who was an employee of L&D Scrap, had entered the courtroom without the knowledge of the trial judge or any of the attorneys. Because the sequestration rule had been invoked, defense counsel moved for a mistrial. *See* Miss. R. Evid. 615. The trial court determined that Harper had been in the courtroom inadvertently; therefore, the trial court denied defense counsel's motion for a mistrial but ruled that Harper would not be allowed to testify. Defense counsel expressed concerns that the contents of the scrap purchase tickets had been testified to and requested that the trial court instruct the jury to disregard any testimony involving that evidence. The trial court stated that it would instruct the jury at the close of evidence if defense counsel wished it to at that time.

¶11. At the close of their case, defense counsel conferred with McCollum regarding the L&D Scrap purchase ticket testimony. The following exchange then occurred:

> DEFENSE COUNSEL: Your Honor, I just want to clarify what the instruction would be as far as excluding evidence or testimony regarding L&D. If the instruction is going to be disregard any and all testimony, evidence about L&D, wipe it out of your mind, then we want that instruction. But if it's going

to be, like, receipts, real complicated and specific, we would rather just—THE COURT: I would probably just tell the jury that there may have been references to receipts at a scrap yard and they are to disregard any testimony about that, and that would be all I would say.

DEFENSE COUNSEL: Okay. We'll just let it be.

THE COURT: Let it be. Do you want me to make—

DEFENSE COUNSEL: No.

THE COURT: —that instruction?

DEFENSE COUNSEL: No, Your Honor.

¶12. The jury found McCollum not guilty of burglary of a nondwelling and guilty of grand larceny. The trial court sentenced him to serve five years as a habitual nonviolent offender.

¶13. McCollum timely appealed and raised the following three issues:

I. Whether the trial court erred by denying the motion to suppress evidence obtained from the search of McCollum's residence.

II. Whether the trial court erred by allowing inadmissible hearsay evidence.

III. Whether the trial court erred by overruling McCollum's motion for a mistrial.

**STANDARD OF REVIEW**

¶14. We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (¶ 12) (Miss. 1999). "In determining whether evidence should be suppressed, a trial court's findings of fact will not be disturbed on appeal absent a finding the trial court 'applied an incorrect legal standard, committed manifest error, or made a decision contrary to the overwhelming weight of the

6

evidence.'" *Crawford v. State*, 192 So. 3d 905, 923 (¶ 78) (Miss. 2015) (quoting *Simmons v. State*, 805 So. 2d 452, 482 (¶ 64) (Miss. 2001)).

¶15.    To evaluate whether the issuance of a warrant is based on sufficient probable cause, we use the "totality-of-the-circumstances approach" explained by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 230 (1983), and adopted by the Mississippi Supreme Court in *Lee v. State*, 435 So. 2d 674, 676 (Miss. 1983).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed . . . .

*Id.* at 676 (second, third, and fourth alterations in original) (quoting *Gates*, 462 U.S. at 238-39).  We review a trial court's decision to admit potential hearsay testimony for abuse of discretion.  *Eubanks v. State*, 291 So. 3d 309, 322 (¶ 47) (Miss. 2020) (quoting *Rogers v. State*, 95 So. 3d 623, 627 (¶ 13) (Miss. 2012)).

## DISCUSSION

I.    **Whether the trial court erred by denying the motion to suppress evidence obtained from the search of McCollum's residence.**

¶16.    McCollum filed a motion to suppress all evidence obtained from his residence through the search warrant because he claimed the supporting affidavit lacked probable cause.  The trial court did not rule on the motion.  Because McCollum failed to acquire a ruling on his motion at trial, he is procedurally barred from raising the issue on appeal.  "[T]he burden is on the movant to obtain a ruling on a pre-trial motion, and failure to do so constitutes a

7

procedural bar." ***Chamberlin v. State***, 989 So. 2d 320, 343 (¶ 86) (Miss. 2008) (citing Miss. Uniform R. Cir. & Cnty. Ct. P. 2.04).

¶17.    When a defendant fails to preserve an issue by failing to first bring it before the trial judge for a ruling, we may reverse only for plain error.  ***Willie v. State***, 204 So. 3d 1268, 1278 (¶ 28) (Miss. 2016) (holding plain error review was appropriate when defendant failed to object to proposed jury instruction); ***Hall v. State***, 201 So. 3d 424, 428 (¶ 12) (Miss. 2016) (holding plain error review was appropriate when defendant failed to object to the selection of the jury foreperson).  The need to find plain error arises from the long-standing principle that appellate courts will not find a trial judge in error on a matter not first presented to the trial judge for decision.  ***Taylor v. State***, 330 So. 3d 758, 769 (¶ 26) (Miss. 2021) (citing ***Maness v. K & A Enters. of Miss.***, ***LLC***, 250 So. 3d 402, 410 (¶ 20) (Miss. 2018)).

> "Under the plain-error standard of review, we consider: (1) whether there was an error; (2) that adversely affected a defendant's substantive rights, causing a manifest miscarriage of justice."  "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings."

***Johnson v. State***, 290 So. 3d 1232, 1240 (¶ 34) (Miss. 2020) (citations omitted).  Also, "Prejudice often is lacking when the weight of the evidence against a defendant is overwhelming."  ***Hall***, 201 So. 3d at 428 (¶ 12) (internal quotation marks omitted) (quoting ***Moffett v. State***, 156 So. 3d 835, 870 (¶ 109) (Miss. 2014)).

¶18.    For the reasons given below, we would be hard pressed to hold the trial judge committed any error, much less plain error, when denying McCollum's suppression motion.

¶19. "In reviewing the magistrate's finding, we do not determine de novo whether probable cause existed. Rather, our task as a reviewing court is to insure that there was a substantial basis for the magistrate's determination of probable cause." *Smith v. State*, 504 So. 2d 1194, 1196 (Miss. 1987) (citations omitted). Ample probable cause existed to form a substantial basis upon which the magistrate could base the warrant.

¶20. The affidavit underlying the warrant stated:

> Your Affiant Lieutenant Investigator Leon Wedgeworth is working on an open investigation with the Simpson County Sheriff's Department. On Monday October 14, 2019, Simpson County Deputy Kevin Freeman took a report of a burglary and grand larceny located at 1713 Hwy 541 North, Case number 2019-1130. Numerous items have been reported stolen from the residence. Also, during the course of the report and investigation it was learned that a shed had also been broken into along with the home and items removed from that shed. The vehicle bearing Mississippi tag CV1-3557 was identified as the vehicle used in the crime. The vehicle was on camera during the commission of the crime. The owner of said vehicle Charles Ray McCullum [sic] Jr. has been arrested and charged with said crime. Some of the items stolen have been recovered from L & D scrape [sic] yard in Magee, Mississippi. The remaining items have not been located.

¶21. McCollum claims that the warrant was invalid because the sentence, "The vehicle was on camera during the commission of the crime," is false. The initial theft occurred on October 14, but the recordings of the truck on the property were from October 15 and 18. McCollum argues that, because of the false statement in the warrant, he is entitled to a probable cause hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). A *Franks* hearing is required

> "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment

9

requires that a hearing be held at the defendant's request." "There must be allegations of deliberate falsehood or of reckless disregard for the truth and those allegations must be accompanied by an offer of proof . . . . Allegations of negligence or innocent mistake are insufficient."

*Petti v. State*, 666 So. 2d 754, 762 (Miss. 1995) (Pittman, J., dissenting) (alterations in original) (quoting *Franks* at 438 U.S. 155-56, 171).

¶22. No evidence in the record suggests that the false statement was anything more than a result of negligence or mistake. Certainly, there is no evidence that the statement was made with the intent to be misleading or false or that the statement was made with reckless disregard for the truth. We take into consideration the *Franks* Court's reluctance "to extend the rule of exclusion beyond instances of deliberate misstatements and those of reckless disregard . . . ." *Franks*, 438 U.S. at 170. McCollum's argument would fail on that point alone—the affiant did not have the required intent to mislead or reckless disregard for the truth—however, the false statement was also unnecessary to the finding of probable cause.

¶23. The record contains myriad evidence supporting the averment that McCollum's "vehicle bearing Mississippi tag CV1-3557 was identified as the vehicle used in the crime." McCollum's truck was pictured on the property twice after the report of theft was filed. McCollum and his truck were identified by a scrap yard employee. Further, McCollum's name was on the L&D Scrap scale purchase tickets where some of the stolen property was found, McCollum was identified as a suspect in previous thefts that occurred in the area, and Investigator Wedgeworth, after searching McCollum in NCIC, obtained McCollum's address and vehicle tag number matching the truck recorded on camera.

¶24. The evidence supported that probable cause existed that a crime was committed

and that McCollum committed it. Probable cause is:

> a practical, non-technical concept, based upon the conventional considerations of every day life on which reasonable and prudent men, not legal technicians, act. It arises when the facts and circumstances within an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.

*State v. Woods*, 866 So. 2d 422, 426 (¶ 11) (Miss. 2003) (quoting *Strode v. State*, 231 So. 2d 779, 782 (Miss. 1970)).

¶25. Multiple individuals implicated McCollum in the theft. Based on the reliable information known to him, Investigator Wedgeworth suspected McCollum's involvement in the theft. As a result, Investigator Wedgeworth obtained a legal search warrant to search McCollum's residence. At McCollum's residence, the arresting officer then observed items matching the description of Mangum's stolen property. Based on the totality of the circumstances, Investigator Wedgeworth presented sufficient probable cause to the magistrate that McCollum committed the theft against Mangum to justify the search warrant.

## II. Whether the trial court erred by allowing inadmissible hearsay evidence.

¶26. McCollum argues that the trial court allowed inadmissible hearsay related to Investigator Wedgeworth's testimony. First, McCollum argues that the trial court improperly allowed Investigator Wedgeworth to testify that he determined McCollum's vehicle was involved in the crime based on his LeadsOnline search. Second, McCollum argues that the trial court improperly allowed the State to admit into evidence the NCIC report with Investigator Wedgeworth's notation "Vehicle Used" at the top.

¶27. Investigator Wedgeworth testified that he used the online database LeadsOnline to track the scrap that was sold at L&D Scrap and ultimately link the sale to McCollum. The trial court allowed Investigator Wedgeworth to testify over defense counsel's objection that the testimony was hearsay. The testimony was proper because our Court has held that "Statements do not constitute hearsay when admitted to explain an officer's course of investigation or motivation for the next investigatory step by that officer." *Eubanks*, 291 So. 3d at 322-23 (¶ 51) (quoting *Smith v. State*, 258 So. 3d 292, 309 (¶ 52) (Miss. Ct. App. 2018)). The trial court cited the above rule when it determined Investigator Wedgeworth's statements regarding LeadsOnline was not an out of court statement but rather a description of his investigation. Confirming his LeadsOnline search was common procedure while investigating stolen items, Investigator Wedgeworth testified that "[t]here . . . [are] some databases that we utilized to try to determine if the individual sold, [or] pawned items." Investigator Wedgeworth's purpose in testifying about his LeadsOnline search was to explain how his investigation led to the identification of McCollum's truck. Accordingly, Investigator Wedgeworth's testimony regarding LeadsOnline was admissible.

¶28. Next, the State asked Investigator Wedgeworth whether he searched McCollum's name through NCIC, which is a driver's license and tag database. Investigator Wedgeworth confirmed that an NCIC report was the sort of document he would receive in the ordinary course of business as a law enforcement officer. Defense counsel objected to the admission of the NCIC report with Investigator Wedgeworth's notation that McCollum's vehicle was the vehicle used in the crime, claiming it was prejudicial. Investigator Wedgeworth testified

12

that the tag number on the NCIC report matched the tag number that he identified as belonging to McCollum. The trial court allowed the NCIC report with all of its markings to be admitted into evidence. Additionally, Investigator Wedgeworth was allowed to testify that he wrote "Vehicle Used" at the top of the report because that vehicle was identified when he searched LeadsOnline as selling scrap to scrap yards.

¶29. McCollum argues that (1) LeadsOnline is unreliable because it is a database purporting to be a compilation of information from various entities, (2) Investigator Wedgeworth's testimony that LeadsOnline identified McCollum's vehicle as being used to sell scrap to scrap yards was inadmissible hearsay, and (3) the error in admitting the NCIC report was compounded by Investigator Wedgeworth's notation "Vehicle Used" on the NCIC report.

¶30. It was certainly within the trial court's discretion to determine that the testimony about LeadsOnline was used to explain Investigator Wedgeworth's investigative process. Testimony showed that LeadsOnline is commonly used by officers seeking to track sales of illegally acquired goods and that it was a step in Investigator Wedgeworth's process. Because the LeadsOnline testimony describes the course of conduct of Investigator Wedgeworth's investigation, it is not hearsay. McCollum's first and second arguments are without merit. Neither involved inadmissible hearsay.

¶31. Likewise, the NCIC report itself is admissible as illustrating Investigator Wedgeworth's investigative process. The notation "Vehicle Used" at the top is hearsay likely outside an exception. The inclusion, however, is undoubtedly harmless. The only

13

message that the notation conveys to the jurors is that the prosecution believed that the truck pictured was used in the crime. The jury is aware that the prosecution would not introduce into evidence pictures of trucks that they do not believe are the vehicle used in the crime, so if the same picture was introduced without the notation, it would have had the same effect. The notation was redundant and unaffecting of the jury, and was, therefore, harmless. "For a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." *Jackson v. State*, 245 So. 3d 433, 439 (¶ 32) (Miss. 2018) (quoting *Pham v. State*, 716 So. 2d 1100, 1102 (¶ 12) (Miss. 1998)). The introduction of the NCIC report with the notation "Vehicle Used" did not result in prejudice and harm, nor did it adversely affect a substantial right of a party.

¶32. McCollum's arguments that the trial court allowed inadmissible hearsay into evidence do not warrant reversal.

### III. Whether the trial court erred by overruling McCollum's motion for a mistrial.

¶33. McCollum argues that the presence of a witness for the State during the testimony of another witness after the sequestration rule had been put in place warrants a mistrial. Mississippi Rule of Evidence 615 says, in part: "At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Miss. R. Evid. 615. The advisory committee note, as well as years of court practice, instruct as to what the proper remedy is when the rule is inadvertently broken. The trial judge had several remedies available at his discretion, including allowing a full-bore cross-examination, allowing the witness to testify after determining the defense would not be prejudiced by the rule violation,

14

citing the witness for contempt, or barring the witness from testifying altogether. Miss. R. Evid. 615 advisory comm. n. The witness was excluded from testifying altogether. Ultimately, we have held that the "enforcement of the rule is a procedural matter solely within the discretion of the judge." *Johnson v. State*, 346 So. 2d 927, 930 (Miss. 1977) (citing *Butler v. State*, 320 So. 2d 786, 788 (Miss. 1975)). There was no error and no grounds for mistrial.

## CONCLUSION

¶34. McCollum waived the motion-to-suppress issue by failing to obtain a ruling from the trial court; the claim also lacks merit. The trial court did not allow inadmissible hearsay warranting reversal. McCollum's motion for mistrial was without merit and was properly denied. Accordingly, the decision of the trial court is affirmed.

¶35. **AFFIRMED.**

**RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶36. I would find that the search warrant affidavit contained false statements, that the trial court erred by allowing inadmissible hearsay, and that the combination of these errors requires reversal. Therefore, I respectfully dissent.

¶37. I first disagree with the majority's conclusion that the magistrate had ample probable cause to issue a search warrant. "A search warrant may only be issued when the police have demonstrated probable cause by introducing evidence of underlying facts and circumstances

15

before the magistrate granting the warrant." ***Petti v. State***, 666 So. 2d 754, 757 (Miss. 1995)

(quoting ***Barrett v. Miller***, 599 So. 2d 559, 566 (Miss. 1992)). This Court has stated that

> [P]robable cause [for the issuance of a search warrant] exists when facts and circumstances within an officer's knowledge, or of which he has reasonable trustworthy information, are sufficient within themselves to justify a man of average caution in the belief that a crime has been committed and that a particular person committed it.

*Id.* (quoting ***Barrett***, 599 So. 2d at 566). When determining whether probable cause existed

for the issuance of a search warrant, a totality of the circumstances approach is used, and "the

judge must scrupulously examine facts, make careful evaluation, and in his best judgment

gleaned from life's experiences, determine whether he has a substantial basis for concluding

probable cause existed." ***Bevill v. State***, 556 So. 2d 699, 712 (Miss. 1990) (quoting ***Illinois***

***v. Gates***, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).

¶38.    At issue is the search warrant affidavit. "An affidavit for a search warrant is a means

of presenting to the issuing officer a basis upon which he may determine whether in fact

probable cause exists." *Id.* (citing ***Powell v. State***, 355 So. 2d 1378 (Miss. 1978)). In addition

to the affidavit, "[o]ral testimony is admissible before the officer who is required to issue a

search warrant." ***Petti***, 666 So. 2d at 758 (alteration in original) (internal quotation mark

omitted) (quoting ***Prueitt v. State***, 261 So. 2d 119, 123 (Miss. 1972)). "[T]his Court looks

both to the facts and circumstances set forth in the affidavit for search warrant and as well,

the sworn oral testimony presented to the issuing magistrate." *Id.* (internal quotation mark

omitted) (quoting ***Williams v. State***, 583 So. 2d 620, 622 (Miss. 1991)).

¶39. On October 23, 2019, Investigator Wedgeworth obtained a search warrant for McCollum's residence. The affidavit stated:

### UNDERLYING FACTS AND CIRCUMSTANCES

Your Affiant Lieutenant Investigator Leon Wedgeworth is working on an open investigation with the Simpson County Sheriff's Department. On Monday October 14, 2019, Simpson County Deputy Kevin Freeman took a report of a burglary and grand larceny located at 1713 Hwy 541 North, Case number 2019-1130. Numerous items have been reported stolen from the residence. Also, during the course of the report and investigation it was learned that a shed had also been broken into along with the home and items removed from that shed. The vehicle bearing Mississippi tag CV1-3557 was identified as the vehicle used in the crime. The vehicle was on camera during the commission of the crime. The owner of said vehicle Charles Ray McCullum [sic] Jr. has been arrested and charged with said crime. Some of the items stolen have been recovered from L & D scrape [sic] yard in Magee, Mississippi. The remaining items have not been located.

¶40. McCollum filed a motion to suppress evidence and argued for the suppression of any evidence collected pursuant to the search warrant. McCollum argued that the affidavit for the search warrant had contained misleading and false statements to establish probable cause. Notably, McCollum took issue with the affidavit's statements that "[t]he vehicle bearing Mississippi tag CV1-3557 was identified as the vehicle used in the crime" and "[t]he vehicle was on camera during the commission of the crime." McCollum pointed out that Mangum had reported stolen items on October 14, 2019. But the blue pickup truck had not been pictured on Mangum's property until October 15, 2019, and October 18, 2019.

¶41. The record does not contain a ruling from the trial court on the motion to suppress. After initial arguments on the motion to suppress, defense counsel and the prosecution began to discuss whether the State would be allowed to present into evidence the scale purchase

17

tickets from L&D Scrap that referenced McCollum scrapping tin. The trial court issued a ruling on the scale purchase tickets, and the parties did not return to the issue regarding the affidavit in support of the search warrant.

¶42. Although it is generally the movant's duty to pursue a motion to decision by the court, I would find that reversible error occurred and that McCollum is not procedurally barred from arguing his claim. The United States Supreme Court has found that a defendant has the right to challenge the truthfulness of statements made in a search warrant affidavit. *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). It mandated that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.*

¶43. Following the *Franks* decision, this Court held that, when a magistrate is misled when issuing a search warrant, the search and seizure becomes illegal. *Pipkins v. State*, 592 So. 2d 947, 947 (Miss. 1991). It reiterated that "the job of the reviewing court is to insure that the issuing magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 949 (citing *Harper v. State*, 485 So. 2d 1064, 1066 (Miss. 1986)). This Court found that the deputy that had applied for the search warrant had been "less than candid with the issuing

18

judge." *Id.* at 950. The deputy had written in his search warrant affidavit that information had been provided by a reliable confidential informant that had provided information in the past. *Id.* at 947-48. Yet trial testimony established that the deputy had become "acquainted with the confidential informant possibly on the day of the search and seizure" and that the informant may not have actually seen drugs at the defendant's house. *Id.* at 950. When the Court considered the search warrant affidavit in light of the deputy's testimony at the suppression hearing and trial, it determined that probable cause had not existed and reversed the defendant's conviction. *Id.* at 951-52.

¶44.    Similarly, in *Turner v. State*, an agent submitted an affidavit for a search warrant that had stated that the information contained within had come from "a known and reliable informant." *Turner v. State*, 945 So. 2d 992, 994 (Miss. Ct. App. 2007). Defense counsel filed a motion to suppress and argued that the informant had submitted sworn testimony that she had never given prior information to any drug agency. *Id.* at 996. Defense counsel failed to appear at the hearing, however. *Id.* at 997. Thus, the trial court found that the motion had been abandoned. *Id.* At trial, the agent testified that he had no prior relationship with the informant and had met her the day she provided the information used in the affidavit. *Id.* The defendant's new counsel made an *ore tenus* motion to dismiss. *Id.* The trial court found that the issue should have been brought in a motion to suppress prior to trial and denied the motion to dismiss. *Id.* On appeal, the Court of Appeals found that a hearing on the matter was required and stated:

> There is no doubt that the failure to pursue a motion to decision is deemed an abandonment of the motion. URCCC 2.04. However, it is what transpired

19

during the trial that gives us grave concern. As stated, the State's key witness admitted that what he had said in the affidavit for the search warrant was not correct. After that testimony, the trial court was faced with a key question: whether it is within constitutional limits to accept as evidence the fruits of what was then known to possibly be an invalid search warrant, notwithstanding that the delay in discovering this fact was caused by counsel's failure to pursue the motion to suppress.

*Id.*

¶45. The Court of Appeals then applied *Pipkins* and wrote:

> In our view, *Pipkins* stands at least for the proposition that when the issuing magistrate is given false facts which are indispensable to the probable cause determination, probable cause cannot exist, and the fruits of the search must be suppressed, even if the search warrant was properly issued based on the false facts which were presented to the magistrate. When the true facts are revealed, the prior probable cause determination must yield to the new reality occasioned by the new and correct set of facts.

*Id.* at 998. Therefore, the Court of Appeals found that the trial court had abused its discretion by summarily dismissing the defendant's motion to dismiss at trial, and it reversed and remanded the case to the trial court to determine whether the officer intentionally had given false and misleading information to the judge that had issued the search warrant. *Id.* at 998-99. I would find that the Court of Appeals' logic is sound.

¶46. Here, the magistrate was also given false facts. As previously stated, the search warrant affidavit provided that

> Your Affiant Lieutenant Investigator Leon Wedgeworth is working on an open investigation with the Simpson County Sheriff's Department. On Monday October 14, 2019, Simpson County Deputy Kevin Freeman took a report of a burglary and grand larceny located at 1713 Hwy 541 North, Case number 2019-1130. Numerous items have been reported stolen from the residence. Also, during the course of the report and investigation it was learned that a shed had also been broken into along with the home and items removed from that shed. The vehicle bearing Mississippi tag CV1-3557 was identified

20

as the vehicle used in the crime. The vehicle was on camera during the commission of the crime. The owner if said vehicle Charles Ray McCullum [sic] Jr. has been arrested and charged with said crime. Some of the items stolen have been recovered from L & D scrape [sic] yard in Magee, Mississippi. The remaining items have not been located.

At trial, however, Investigator Wedgeworth testified that he had no evidence that McCollum was on Mangum's property on October 14.

¶47. Thus, as the majority acknowledges, the statement that "[t]he vehicle was on camera during the commission of the crime" was false. Even so, the majority states that no evidence suggests that the statement was more than negligence or mistake. I disagree. Investigator Wedgeworth arrived at Mangum's property when he reported that someone had been on his property. It is undisputed that cameras were not on Mangum's property at this time. The affidavit certainly could have stated that McCollum's truck had been pictured twice in the days following when Mangum believed his items had been stolen; yet it did not. Thus, in my opinion, the statement that Mangum's truck was on camera during the commission of the crime was at least in reckless disregard of the truth.

¶48. I also disagree with the majority's conclusion that "[t]he record contains myriad evidence supporting the averment that McCollum's 'vehicle bearing Mississippi tag CV1-3557 was identified as the vehicle used in the crime.'" Maj. Op. ¶ 23. As previously stated, the State presented no evidence that McCollum's truck was on Mangum's property before October 15. While McCollum's truck was pictured subsequently on Mangum's property, he was not charged with any additional crime. And though the majority points out that McCollum was a suspect in previous thefts in the area, that lends no support to the contention

21

that his vehicle was used in this crime. The search warrant affidavit also contained no mention of that contention. Therefore, in my opinion, Investigator Wedgeworth's statements in his affidavit that "[t]he vehicle bearing Mississippi tag CV1-3557 was identified as the vehicle used in the crime" and that "the vehicle was on camera during the commission of the crime" were false statements.

¶49. This Court previously has stated that "[i]nformation . . . may be purged from an affidavit and the remainder of the affidavit may be considered to determine if probable cause existed for the issuance of the search warrant." *Bevill*, 556 So. 2d at 712 (citing *Walker v. State*, 473 So. 2d 435 (Miss. 1985)). McCollum argues that without the false statements, the remainder of Investigator Wedgeworth's affidavit was insufficient to establish probable cause. I agree. "[P]robable cause exists when the facts and circumstances within an officer's knowledge are 'sufficient to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.'" *Roach v. State*, 7 So. 3d 911, 917 (Miss. 2009) (quoting *State v. Woods*, 866 So. 2d 422, 426 (Miss. 2003)). "In reviewing a magistrate's finding of probable cause, this Court does not make a de novo determination of probable cause, but only determines if there was a substantial basis for the magistrate's determination of probable cause." *Id.* (quoting *Petti*, 666 So. 2d at 757-78).

¶50. Excluding the misleading statements, the affidavit established that Investigator Wedgeworth had been working on an investigation and that numerous items had been stolen from Mangum's property. It additionally established that McCollum had been arrested and charged with the crime and that items had been recovered from L&D Scrap but that

remaining items had not been located. Taking the whole of the remaining information into consideration, I would find that the affidavit was insufficient to establish probable cause to search McCollum's residence.

¶51.    Moreover, this error was compounded by the trial court's admission of Investigator Wedgeworth's testimony that he used to LeadsOnline to determine that McCollum's vehicle had been used to sell scrap to scrap yards and by the trial court's allowance of the NCIC report with the handwritten notation "Vehicle Used."

¶52.    "When reviewing a hearsay challenge, this Court applies the abuse-of-discretion standard." *Augustine v. State*, 337 So. 3d 646, 649 (Miss. 2022) (citing *White v. State*, 48 So. 3d 454, 456 (Miss. 2010)). Reversal is appropriate "if the admission of evidence results in prejudice to the accused." *Eubanks v. State*, 291 So. 3d 309, 322 (Miss. 2020) (internal quotation mark omitted) (quoting *Rogers v. State*, 95 So. 3d 623, 627 (Miss. 2012)).

¶53.    During Investigator Wedgeworth's trial testimony, the prosecution inquired about the next step in the investigation following Investigator Wedgeworth's initial visit to Mangum's property. Investigator Wedgeworth responded, "[t]here's some databases that we utilized to try to determine if the individual sold, pawned items." The prosecution then asked, "And in this case, were you able to identify any scrap yard in Simpson County?" Defense counsel objected, and an off-the-record bench conference occurred. The testimony proceeded, and Investigator Wedgeworth stated that, after he received a call from Mangum, he went to L&D Scrap. Another off-the-record bench conference occurred, and the trial court excused the jury from the courtroom. The trial court stated that there was an objection at sidebar to the scale

purchase tickets. At that time, the State made a proffer of Investigator Wedgeworth's next line of testimony.

¶54. Investigator Wedgeworth stated that the sheriff's office utilized as an investigative tool a database called LeadsOnline, on which scrap yards, pawnshops, and similar entities report items that they purchase. He proffered that the scrap yards categorized items depending on what was being sold and stated, "[i]t may be copper wire. It may be aluminum cans. It may be short iron. It may be tin, which covers various items." Investigator Wedgeworth confirmed that the term *tin* was not limited solely to pieces of tin and could refer to other items containing tin such as "a washing machine, a dryer, a wagon, a bicycle." Investigator Wedgeworth additionally stated that, when he had visited L&D Scrap on October 15, he had discovered items belonging to Mangum and had also received the scale purchase tickets. The tickets were offered for identification at that time.

¶55. Defense counsel objected and argued that any evidence or testimony "regarding Leads.com" would be hearsay. Additionally defense counsel argued that Investigator Wedgeworth was not qualified to testify as to what constituted *tin*. The trial court overruled defense counsel's objection as to LeadsOnline and ruled that the testimony was part of the investigation and was not an out-of-court statement. The trial court further stated that "[a]s far as the documents that have been submitted," the State was only offering them for identification purposes at that time and confirmed that the State planned to enter them into evidence through an employee of L&D Scrap.

¶56. The trial court called the jury back in at that point. Investigator Wedgeworth testified that, when he had arrived at L&D Scrap, he had spoken to an employee that worked in "the pay scale, which is the scale that comes into the yard, weights items and then she pays them out and takes identification and documentation of it." He stated that an employee of L&D Scrap had provided two scale purchase tickets, that the scale purchase tickets were dated October 15, 2019, and that the recipient on the tickets was Charles McCollum, Jr. Investigator Wedgeworth testified that McCollum's driver's license had been attached to the scale purchase tickets.

¶57. Investigator Wedgeworth later testified that, before October 18, as part of his investigation, he had identified McCollum as a suspect in "several thefts throughout the county in that area." Defense counsel objected to that statement as prejudicial and irrelevant, and the trial court overruled the objection. The State then asked Investigator Wedgeworth if he had "run Mr. McCollum through your drivers license and through tag reader? I believe it's NCIC is how y'all refer to it?" Investigator Wedgeworth stated that on October 16, he "had dispatch run what we call the 28 information, which is a tag on Mr. McCollum's vehicle." The State handed Investigator Wedgeworth the NCIC report and asked if it was the printout from the NCIC regarding McCollum's vehicle. He again confirmed. The State asked if it was "the sort of document you would receive in the ordinary course of business and in your law enforcement?" And Investigator Wedgeworth stated that it was.

¶58. The State then asked that it be entered into evidence. Defense counsel objected and argued against "any markings being made, that have been made to this document." Defense

25

counsel argued that the markings were prejudicial. The trial court allowed the State to mark it for identification purposes only at that time.

¶59. Investigator Wedgeworth next testified that the tag number on the NCIC report matched the tag number that he had identified as belonging to McCollum. He also confirmed McCollum's address on the NCIC report. The State asked Investigator Wedgeworth about the handwritten note that stated, "Vehicle Used[,]" on the document. The State asked why that had been written on the document. Defense counsel again objected as prejudicial, and the trial court overruled her objection. Investigator Wedgeworth then stated, "[t]hat vehicle was identified when we used the database LeadsOnline as selling scrap to scrap yards. So I wrote on the top of that sheet that said vehicle used." The trial court then allowed the State to admit the document into evidence over defense counsel's objection.

¶60. Therefore, McCollum objected to any evidence or testimony regarding LeadsOnline as being hearsay. Hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." MRE 801(c). "Our hearsay rule, M.R.E. 802, states in no uncertain terms that '[h]earsay is not admissible except as provided by law.' The prohibition is loud and clear. 'Hearsay is incompetent evidence.'" *Quimby v. State*, 604 So. 2d 741, 746 (Miss. 1992) (alteration in original) (quoting *Murphy v. State*, 453 So. 2d 1290, 1294 (Miss. 1984)). This is because hearsay "is considered unreliable and untrustworthy." *Rogers*, 95 So. 3d at 630 (citing *Burchfield v. State*, 892 So. 2d 191, 198 (Miss. 2004)). I

would find that Investigator Wedgeworth's testimony regarding LeadsOnline was inadmissible hearsay.

¶61.   Investigator Wedgeworth testified that he had hand written "Vehicle Used" on the NCIC report because "[t]hat vehicle was identified when we used the database LeadsOnline as selling scrap to scrap yards." Mississippi Rule of Evidence 801(a) defines *statement* as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." MRE 801(a). Investigator Wedgeworth's testimony was an oral assertion that LeadsOnline had identified the vehicle as having sold scrap to scrap yards. Therefore, his testimony meets the definition of a *statement*.

¶62.   This Court previously has held that "[s]tatements do not constitute hearsay when admitted to explain an officer's course of investigation or motivation for the next investigatory step by that officer." *Eubanks*, 291 So. 3d at 322-23 (internal quotation marks omitted) (quoting *Smith v. State*, 258 So. 3d 292, 309 (Miss. Ct. App. 2018)). Citing *Eubanks*, the Court of Appeals has concluded that an investigator's statement that LeadsOnline had shown that the defendant had pawned a concrete saw was not hearsay because the testimony was to explain the course of the investigation and his motivation for the next investigatory step. *Stevens v. State*, 312 So. 3d 1205, 1209 (Miss. Ct. App. 2021) (quoting *Eubanks*, 291 So. 3d at 322-23). It further held, however, that the trial court had abused its discretion by admitting into evidence the "LeadsOnline Ticket" that had documented the transaction. *Id.* (internal quotation marks omitted). The Court of Appeals reasoned that the officer's testimony had established why his investigation had focused on

27

the defendant as the main suspect and, thus, there was no reason to offer further documentary evidence. ***Id.***

¶63. Here, Investigator Wedgeworth's handwritten notation was ancillary to the NCIC report. The course of the investigation had been explained through the admission of the NCIC report, and Investigator Wedgeworth's handwritten note on the NCIC report was rendered unnecessary. Thus, in my opinion, it exceeded any permissible scope of explaining Investigator Wedgeworth's actions. I would find that the statement was offered "to prove the truth of the matter asserted in the statement" by informing the jury that LeadsOnline had indicated that McCollum's vehicle had been identified as being used to sell scrap to scrap yards. As McCollum argues, the handwritten notation was especially prejudicial because it was merely Investigator Wedgeworth's theory.

¶64. Further, LeadsOnline.com is "an online database of pawnshop transactions . . . ." ***Id.*** at 1208. Investigator Wedgeworth stated in his proffer that scrap yards report items that they purchase on LeadsOnline. And while he testified that LeadsOnline had indicated that McCollum's vehicle had been used to sell scrap, Investigator Wedgeworth was not qualified to establish the reliability of LeadsOnline, and the State called no witness to authenticate the reliability of the database. Thus, Investigator Wedgeworth's testimony was highly prejudicial.

¶65. I would find that the trial court erred by allowing prejudicial hearsay evidence. Further, I would find that the search warrant affidavit contained false statements that were crucial to establish probable cause. The statements that McCollum's vehicle was captured

28

on camera during the commission of the crime and that his vehicle was used to commit the crime, in addition to Investigator's Wedgeworth's testimony and handwritten notation that McCollum's vehicle was used to sell scrap to scrap yards, created a narrative that was unreliable and unsupported by evidence. Because the narrative was highly prejudicial, I would reverse McCollum's conviction. Accordingly, I dissent.

**KITCHENS, P.J., JOINS THIS OPINION.**